**HELVERING, Commissioner of Internal Revenue, v. RUSSIAN FINANCE & CONSTRUCTION CORPORATION.**

**SAME v. GEORGIAN MANGANESE CO., Limited.**

**Nos. 325, 326.**

Circuit Court of Appeals, Second Circuit. May 6, 1935.

Frank J. Wideman, Asst. Atty. Gen., and Sewall Key and J. P. Jackson, Sp. Assts. to Atty. Gen., for petitioner.

Davis, Polk, Wardwell, Gardiner & Reed, of New York City (Marion N. Fisher and Marvin Lyons, both of New York City, of counsel), for respondents.

Before MANTON, L. HAND, and AUGUSTUS N. HAND, Circuit Judges.

MANTON, Circuit Judge.

These causes were consolidated for hearing before the Board of Tax Appeals, and are here on petitions to review. The

issues involve income taxes for the years 1925, 1926, and 1927. The question is whether the Georgian Manganese Company, Ltd., was entitled to certain deductions from gross income for the years in question. The question affects the tax liability of both respondents because they were affiliated corporations and filed consolidated returns in these years.

The Georgian Manganese Company, Ltd., a Delaware corporation, was affiliated with the Russian Finance & Construction Corporation, and the books of the taxpayer and its affiliated corporations were kept on an accrual, calendar year basis. By contract the taxpayer agreed to purchase from an organization of 25 producers, referred to as Tchemo members, which controlled the production and sale of ore in the Tchistouri region in the State of Georgia, Russia, 600,000 tons of ore on a described price scale, and, in addition, to pay $2 per ton for the 600,000 tons at the expiration of ten years from the date of agreement, with interest payable semiannually from the time of delivery. This purchase resulted from a concession agreement by which the taxpayer had the exclusive right for a period of twenty years to explore for and mine and export manganese and manganese peroxide ore within a certain area in the Tchistouri region. The Tchemo members were recognized by the Soviet Government as having existing rights in the premises, and it became necessary to have a separate agreement with them, as well as with the Soviet Government, under which the Tchemo members received certain royalties of $2 per ton, and by the terms of which agreement they granted to the taxpayer all their rights in the mining property, buildings, and equipment used in their operation. The taxpayer obligated itself to pay a minimum of $62,350,000 in royalties over the twenty-year period the agreement was to run, and to spend $4,000,000 in constructing and improving mining equipment, loading apparatus, and a railroad line. It posted a bond in the amount of $1,000,000 to remain in effect until $3,000,000 had been expended on improvements. The Soviet Government had no right of unilateral cancellation except in the event of a breach by the taxpayer. The taxpayer had the right to cancel the contract on six months' notice, but in such event the taxpayer was to forfeit all improvements and to make payment to the Soviet Government up to $4,000,000 of the amount not expended on improvements. By the terms of the contract, the taxpayer was to be discharged from his obligation to make the $2 per ton payment upon the occurrence of any one of three specified events, namely:

(1) Termination of the agreement between the taxpayer and the Soviet Government before its expiration, for any cause except breach of the agreement by the taxpayer;

(2) Breach of the agreement by the promisee;

(3) The existence of a strike sufficient in magnitude seriously to have handicapped the mining and delivery of the ore for one year.

Operations commenced in July, 1925, and delivery of 600,000 tons was completed May 15, 1927. The taxpayer charged against income on its books, on account of this obligation to pay $2 per ton for the three years in question, amounts totaling $1,200,000. Gross income from sales was entered on the books in respect to the same quantities of ore. The deduction of this $2 per ton was disallowed by the Commissioner.

As a result of a dispute which arose between the taxpayer and the Soviet Government, the concession agreement was canceled by consent August 28, 1928, without any formal determination of the dispute as to which party was guilty of the breach. The cancellation of the concession agreement accelerated the maturity of the $2 per ton obligation, and made it payable three months after August 28, 1928, the date of cancellation.

By the terms of the concession agreement, the taxpayer promised to pay annually to the Soviet Government, royalties of $3 per ton for manganese ore and $8 per ton for peroxide ore exported, and, in any event, to pay not less than $1,500,000 a year during the first two years, with increases in subsequent years. The peroxide ore was negligible in quantity, and it was contemplated that exports of a minimum of approximately 500,000 tons of manganese ore per year would be made, and the agreement provided that any portion of the annual minimum not absorbed at the rate per ton could be applied against tonnage exported in subsequent years in excess of the minimum. Royalties were estimated on the

basis of years beginning and ending in July, and at the close of each year there was a shortage. The taxpayer, however, was required to pay $1,500,000 in each of these years. The Commissioner disallowed as deductions for 1926 and 1927 the full amount thus paid on the ground that parts thereof constituted prepayments of royalties for future exports.

■ The word "accrued" should be interpreted in accordance with the statutory requirements that accounts clearly reflect income. In United States v. Anderson, 269 U. S. 422, 46 S. Ct. 131, 70 L. Ed. 347, it was said that an expense may be said to accrue when all the events have occurred which fix its amount and determine that it is to be incurred by the taxpayer. In order to be accruable in the taxable year for which the return is made, a valid obligation to pay must have existed in that year, which is enforceable on the date when the obligation is due. When, however, the obligation to pay is contingent upon the happening of some future event, there is no certainty that it will be paid or will accrue. In such event, no obligation accrues from a fixed or determinable source and no duty arises or exists in the taxable year which can be accounted for as income under any system of accounting. When the right to receive income or the obligation to expend money is certain, not dependent upon the happening of some contingency, it may be classified as accrued. See L. O. 1986, C. B. June 1922, p. 87. The sum of $1,200,000 constitutes an accrued liability only if all the events necessary to bring the liability into existence occurred. In order to be deductible, the liability must be "actual and present, not merely contemplated as more or less sure to occur in the future." Weiss v. Wiener, 279 U. S. 333, 49 S. Ct. 337, 73 L. Ed. 720. The liability to pay $2 by this taxpayer arose upon the delivery of the ore, and, in every sense, was properly an accruable item of expense. It was absolute and fixed, in that no further event needed to occur to bring it into existence. It was, however, possible that the expense might never be actually incurred. The occurrence of any one of three contingencies would relieve the taxpayer from the liability he incurred upon delivery of the ore. But the taxpayer had a reasonable expectancy at the time it accrued this liability on its books that its liability would be enforced. That the liability may not subse-

quently be discharged by payment does not necessarily prevent its consideration as a liability for the years accrued. See Peyton-Du Pont Securities Co. v. Comm'r, 66 F.(2d) 718 (C. C. A. 2). The possibility that a present liability may subsequently be discharged by some condition subsequent does not prevent its accrual on the taxpayer's books. The test is whether a taxpayer is justified in entertaining a reasonable expectation that an expense will be incurred. The taxpayer's liability became fixed upon delivery of the ore, and there then existed reasonable grounds to justify the taxpayer in believing that it would ultimately have to pay the $1,200,000. A presently existing obligation, which the taxpayer has reasonable grounds to believe must eventually be fulfilled, is not uncertain or contingent in the sense that it may not be accrued. See Automobile Ins. Co. v. Comm'r, 72 F.(2d) 265 (C. C. A. 2).

■ The basis of the accrual system of accounting is that obligations incurred in the normal course of business will be discharged in due course. United States v. American Can Co., 280 U. S. 412, 50 S. Ct. 177, 74 L. Ed. 518. This is a necessary assumption. Conditions in the contract which would here have discharged the taxpayer from the liability it incurred upon delivery of the ore were not of a nature which would justify it in believing it would not have to pay the $1,200,000. The conditions never occurred, as the record disclosed, and the liability was in fact discharged by payment. When books are kept on an accrual basis, a presently existing obligation which, in the normal course of events, the taxpayer is justified in believing he must fulfill, may be accrued. The existence of an absolute liability is necessary; absolute certainty that it will be discharged by payment is not. Spring City Foundry Co. v. Comm'r, 292 U. S. 182, 54 S. Ct. 644, 645, 78 L. Ed. 1200. In Spring City Foundry Co. v. Comm'r, supra, speaking of the right to accrue income, the court said: "Keeping accounts and making returns on the accrual basis, as distinguished from the cash basis, import that it is the right to receive and not the actual receipt that determines the inclusion of the amount in gross income. When the right to receive an amount becomes fixed, the right accrues."

Within the same principle, when the obligation to pay an amount becomes fixed, the obligation accrues.

The fundamental requirement is that the return reflects true income, and expenses must be set off against the income to which they are attributable. United States v. Anderson, supra; Miller & Vidor Lumber Co. v. Comm'r, 39 F.(2d) 890, 892 (C. C. A. 5). In the latter case, the court said: "We think these cases and the regulations clearly establish the rule that, as to taxpayers making their returns on the accrual basis, deductions attributable to the business of a particular year must be applied against the income they help to create from the business of that year, and not against that of a subsequent year in which payment was made."

In the instant case, the contract provided that payment of the $2 per ton was additional payment for the ore. Consequently, the $1,200,000 constituted part of the cost of the ore, and the taxpayer so entered this cost upon its books. When the ore was sold by the taxpayer during the taxable years in question, the true income derived from such sale could be ascertained only by offsetting the complete cost of the ore, including the $1,200,000, against the price received upon its sale. Postponing the deduction to the year when the $1,200,000 was actually paid would not reflect true income for that year, but would distort the income.

The minimum royalties paid by the taxpayer in 1926 and 1927, which were in excess of the royalties on the actual exports, are deductible in the years when paid. When minimum royalties are paid as a prerequisite to use and occupancy of the mining property, and to the right to take out any ore, the right to mine in the future against any excess royalties currently paid constitutes a contingency which should not, and could not, defeat a deduction in the year the payment of the minimum royalty was made. There was no prospect that the taxpayer would be able to export more than 500,000 tons of ore per year in the future years. The right to absorb the excess payment in future years was therefore worthless. Comm'r v. The Hub, Inc., 68 F.(2d) 349 (C. C. A. 4). The payments were deductible in full in the years when they were paid. Comm'r v. Jamison Coal & Coke Co., 67 F.(2d) 342 (C. C. A. 3); Burnet v. Hutchinson Coal Co. (C. C. A.) 64 F.(2d) 275; certiorari denied, 290 U. S. 652, 54 S. Ct. 69, 78 L. Ed. 565.

Decisions affirmed.