**AIR–WAY ELECTRIC APPLIANCE CORPORATION v. GUITTEAU, Former Collector of Internal Revenue.**

No. 8740.

Circuit Court of Appeals, Sixth Circuit.

Oct. 16, 1941.

---

[6] See footnote 1.

Frank M. Cobourn, of Toledo, Ohio (George D. Welles, Frank M. Cobourn, Henry W. Seney, and Welles, Kelsey, Cobourn & Harrington, all of Toledo, Ohio, on the brief), for appellant.

Louise Foster, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key and Louise Foster, Sp. Assts. to Atty. Gen., Emerich B. Freed, of Cleveland, Ohio, and John Paul Manton, of Toledo, Ohio, on the brief), for appellee.

Before SIMONS, HAMILTON, and McALLISTER, Circuit Judges.

SIMONS, Circuit Judge.

The appeal is from a judgment of the District Court upon the suit of the appellant for refund of income taxes allegedly overpaid for the years 1927 and 1928. The appellant is aggrieved at the inadequacy of the judgment due to the rejection of its claims for refund in the amounts of $15,179.70, allegedly overpaid for 1927, and $22,341.15 overpaid for 1928.

The taxpayer is a manufacturer of vacuum cleaners, parts and accessories therefor. Its marketing system consisted of the appointment of distributors throughout the country who in turn entered into arrangements with retail dealers who sold to the public. Sales were occasionally made for cash but generally upon installment conditional sales contracts which were assigned by the dealer to the distributor and by the distributor to the appellant. The terms and conditions of sales by the appellant to the distributors and by the distributors to the dealers were governed by written agreements, and during the tax years the transactions were carried on as follows: The appellant charged the distributor for merchandise delivered to him, and when sales were made by dealers on credit the dealers would assign the conditional sales contracts to the distributor and the distributor would assign them to the appellant. When assigned, the face amount of a conditional sales contract would be credited by the taxpayer to the distributor and carried as an account receivable. At the same time the appellant would enter a charge of 10% of the face of the contract against the distributor and give the distributor a deferred credit of 10%. The deferred credits were payable to the distributors from month to month as installments on the conditional sales contract were paid by the makers. The result was a net credit to the distributor of 90% of the contract and a deferred credit of 10% carried by the appellant in an account styled "Reserve for Contingent Collection Expense." When there was default in the payment of a conditional sales contract, any unpaid part of the net credit of 90% and the deferred credit of 10% was

charged-back by the appellant to the distributor.

The appellant kept its books upon an accrual basis and as current sales exceeded collections its accounts receivable proportionally increased during the tax years. The Commissioner added such net increases during the tax years to the appellant's income, rejecting as deductions the items charged by the appellant to reserve on the ground that liability therefor was contingent and so not based upon a present enforceable obligation and not properly chargeable to expense during the tax years because prospective. The court sustained the defense based by the Collector upon the Commissioner's ruling and denied refund.

The Commissioner also increased the appellant's net income for 1928 by adding thereto an amount carried upon the taxpayer's books as increase in a reserve for depreciation of furniture and fixtures used by the distributors. Beginning in 1927 agreements between the taxpayer and its distributors provided for the sale to the distributors, upon their request, of furniture and fixtures suitable to equip their salesrooms. The sales were upon title retaining contracts and the taxpayer charged the distributor's account with the sum of 5% of the sale price each month for 20 months upon the furniture and fixtures credited to him.

The previous arrangement had been a rental of the furniture and fixtures to the distributors upon the value of which the taxpayer took an allowable depreciation. The court concluded that no actual sale of furniture and fixtures took place between the taxpayer and the distributors, that no title to the furniture and fixtures ever passed to the latter, and that, in effect, the alleged sales permitted the taxpayer a depreciation of 5% per month whereas the allowable depreciation on furniture and fixtures was 10% per annum. This conclusion was based upon the provision in the agreement that when the distributor discontinued his contractual relations with the taxpayer he was not entitled to remove the furniture and fixtures, but was given in its stead a credit of 25% of the amount previously paid by him thereon.

■ The first question to be answered is whether the items representing 10% of purchasers' conditional sales contracts carried by the taxpayer in its accounts receivable but balanced by the charge to "Reserve for Contingent Collections," constitute income during the tax years. The taxpayer contends that they do not reflect income because under no circumstances could these items be of economic advantage to it. It is true that the taxpayer secured an assignment of the sales contracts carrying with it the absolute right to make collections thereon. But coincidentally with the acquirement of the right there arose an obligation to pay a similar amount to the distributors if and when the final installments of the sales contracts were collected. The taxpayer, it is true, kept its books upon an accrual basis as distinguished from cash, and accrual is the right to receive income rather than its actual receipt, but there can be no unconditional right to receive income when its receipt involves an obligation to pay it out without benefit to the taxpayer. The Collector, on the other hand, contends that when the sales contracts were assigned the taxpayer acquired an unconditional right to collect the unpaid installments thereon, subject not to a present enforceable obligation to account for them to the distributors, but an obligation based only upon the contingency that they would be collected—a contingency that might or might not result, or, if resulting, might or might not result during the tax years.

The Collector relies upon the rule that reserves are not deductible if they are set up merely to cover contingent liabilities. Brown v. Helvering, 291 U.S. 193, 54 S.Ct. 356, 78 L.Ed. 725; Spring Canyon Coal Co. v. Commissioner, 10 Cir., 43 F.2d 78, 76 A.L.R. 1063; Dayton Co. v. Commissioner, 8 Cir., 90 F.2d 767; Shapleigh Hardware Co. v. United States, 8 Cir., 81 F.2d 697. If the obligation to pay is, in a true sense, based upon a contingency in the sense that that term is used in the cited cases, the judgment should stand. But analysis discloses that it is not. True, the purchasers might never pay up their contracts and be uncollectible, but upon the installments being paid the obligation to pay them over to the distributor is absolute and not contingent and the obligation accrued when the right to collect accrued during the tax years. In this respect that portion of the installment contracts represented by the 10% reserve stands on no different basis than that portion represented by the 90% net credit, for both are subject to the possibility that the purchaser might default, and to defer the liability to pay with respect to the one until the money is received, and to credit the other in advance of payment as accrued, is

to divide the transaction and to place part of it upon an accrual basis and part of it on a cash basis, and this does not reflect true income. Commissioner v. Turney, 5 Cir., 82 F.2d 661; Central Life Society v. Commissioner, 8 Cir., 51 F.2d 939.

It is true that where the receiver of income is a wrongdoer, or where he has treated income as belonging to him, even though title to it may be the subject of controversy and may be defeated, courts have held that the income which he has asserted to be his own or which he has treated as his own, need not be questioned in respect to its being his income by the taxing authorities. National City Bank v. Helvering, 2 Cir., 98 F.2d 93. But that is not this case. The taxpayer here has never laid claim to any beneficial interest in the uncollected 10% of the installment contracts. While it had legal title thereto and the authority to collect, this was always subject to an acknowledged obligation to credit it to the distributors when collected. As was said in American National Co. v. United States, 274 U.S. 99, 47 S.Ct. 520, 522, 71 L.Ed. 946: "The Company's net income for the year could not have been rightly determined without deducting from the gross income represented by the commission notes, the obligations which it incurred under the bonus contracts, and would not have been accurately shown by keeping its books or making its return on the basis of actual receipts and disbursements. The method which it adopted clearly reflected the true income. And, just as the aggregate amount of the commission note was properly included in its gross income for the year— although not due and payable until the expiration of two years—so, under the doctrine of the Anderson case [United States v. Anderson, 269 U.S. 422, 46 S.Ct. 131, 70 L.Ed. 347], the total amount of the bonus contracts was deductible as an expense incurred within the year, although it did not 'accrue' in that year in the sense of becoming then due and payable."

It is true that the taxpayer styled its reserve account as a "Reserve for Contingent Collection Expense," but the mere designation of a reserve as based upon a contingency is not controlling if, in effect, it appears to be something other than a contingent obligation in the true sense. The court should have allowed a refund measured by the items charged to the reserve.

■ The court below concluded that the provisions of the distributors' contracts for the sale to them of furniture and fixtures were not incorporated therein in good faith, and that therefore no title passed to them, and this mainly because of the repurchase clause and the prior rental arrangements herein referred to. We have given consideration to the provisions of the agreement, which are specific. There is recognition that the taxpayer had spent large sums of money in the development and standardization of its marketing system and the creation of good will value to its trade name, and it may be assumed that the furniture and fixtures are primarily useful in the carrying on of the taxpayer's business. The provisions for their sale preserve a lien if not reservation of title as security for the unpaid purchase price, and except as such provisions may sometimes be in restraint of trade, here neither proved nor claimed, we see no bar to the undertaking, nor infirmity due to the repurchase arrangement, having in mind that such repurchase is of used furniture and fixtures at a standardized percentage of original sale price. Such agreements have been held to pass full title and dominion to the buyer even when the contract is denominated one of agency. Standard Fashion Co. v. Magrane-Houston Co., 258 U.S. 346, 347, 354, 42 S.Ct. 360, 66 L.Ed 653; citing Straus v. Victor Talking Machine Co., 243 U.S. 490, 37 S.Ct. 412, 61 L.Ed. 866, L.R.A.1917E, 1196, Ann. Cas.1918A, 955. There were not wanting other indicia of sale. Insurance and personal property taxes were included in the obligations of the distributor. While the repurchase price was without regard to existing value, the method of fixing it had the merit of simplicity and uniformity in winding up a distributorship, and there was provision that upon resale a reappraisal was to be made. We see no sound ground for striking down the provisions of the contracts because of bad faith in their execution. A refund should have been allowed, measured by the reserve for depreciation of furniture and fixtures sold to the distributors.

Reversed and remanded for further proceedings in conformity herewith.

McALLISTER, Circuit Judge (dissenting in part).

The items representing 10% of purchaser's conditional sales contracts, which were carried by the taxpayer in its accounts receivable, constituted income. But a charge of the same amount should have

been allowed, as expense. There was no contingency upon which the taxpayer could ever receive this amount free from the obligation, corresponding and immediate, to pay it out to distributors or dealers.

With regard to the furniture item, the taxpayer's agreement with the distributor was to sell to distributors, for cash or on title retaining contract, whatever furniture and fixtures the seller deemed best for carrying on the business. Such contract provided for a lien in favor of the seller for the unpaid purchase price and an agreement that on termination of the contract, the distributor would sell back to the taxpayer all the furniture, fixtures and equipment for 25% of the amounts that had been actually paid by the distributor.

A previous contract had provided for payment by the distributors of five per cent per month of the cost of the furniture, as rentals. Under the subsequent contract, which is before us, the distributors paid five per cent per month of the cost as payments on the above mentioned contract of sale; and the total of such payments by distributors was sent up by the taxpayer as "Reserve for Depreciation, Branch Furniture and Fixtures." It is claimed by the taxpayer that this designation was a misnomer and that there should have been no reserve account, nor any account for such depreciation. It is further contended that no income to the taxpayer resulted from such transactions with reference to the furniture and equipment, as they were bona fide sales at cost. The issue is resolved into whether the amounts received by the taxpayer were payments on sales of property or rentals for its use. If they were rentals, such payments must be included in income.

The fact that the parties call a transaction a sale is not controlling as to its character. It has been held that where a building was sold by a taxpayer, who took a lease back, the sale being to a trustee who issued land certificates, such sale would be construed as a mortgage rather than as a sale for the purpose of determining who should take depreciation, in an income tax suit. In holding that the important factor was who bore the actual burden of wear and exhaustion of the property rather than who held the technical title, the Supreme Court said: "In the field of taxation, administrators of the laws and the courts are concerned with substance and realities, and formal written documents are not rigidly

binding." Helvering v. F. & R. Lazarus & Co., 308 U.S. 252, 255, 60 S.Ct. 209, 210, 84 L.Ed. 226. See, also, Commissioner v. H. F. Neighbors Realty Co., 6 Cir., 81 F.2d 173.

Plaintiff relies upon the case of Standard Fashion Co. v. Magrane-Houston Co., 258 U.S. 346, 42 S.Ct. 360, 361, 66 L.Ed. 653, in which it was held, under the Clayton Act, 15 U.S.C.A. §§ 12-27, that where a contract provided for the sale of goods, together with an agreement that unsold goods would be repurchased, the transaction was a sale. However, that case is distinguishable from the one before us, inasmuch as the contract in the cited case provided that neglect on the part of the buyer to return the goods within two weeks after the expiration of a three-month notice of termination of contract relieved the seller from obligation under the repurchase agreement. In effect, this resulted in an option on the part of the vendee to return the goods, and the result of the transaction was, as the Court said, that "full title and dominion passed to the buyer." This is not true of the case before us. In Johnson v. Johnson, 80 W. Va. 497, 92 S.E. 795, relied upon by appellant, a contract of sale and repurchase was held a sale rather than a bailment; but this was an action between parties to the agreement. Rights of third parties were not concerned, nor did any question of public policy intervene.

Here, the contract provides that, although appellant sells the equipment to distributors, it must be returned to appellant upon the termination of the contract of distribution, whether such equipment has been fully paid for or not, and that the distributors will receive for such resale, 25% of whatever amount has been paid for the property, regardless of its actual value at the time of such enforced resale.

Whether such a transaction be denominated a sale between the parties to the agreement or not, its purpose was to lease the property and permit its use by the distributor only as long as such relationship with the appellant should continue. The payments made by the distributors on the contract were, in reality, rentals; and the receipt thereof without their inclusion as income in appellant's tax returns could be treated only as reserve for depreciation—which was, in fact, the manner in which they were treated on appellant's books. It was only afterward, when the taxpayer realized that it could not secure an allowance

of such an amount as depreciation that it decided to contend, in spite of its bookkeeping entries, that the item did not represent depreciation reserves, but sales at cost.

The method used by the taxpayer, in effect, permitted a greatly excessive charge for depreciation of approximately 60% per annum, instead of 10%, which was allowed by the commissioner. As between the taxpayer and the government, the contract, for purposes of taxation, must be considered a lease; the payments received by appellant on the contracts are taxable as income from rentals; and the allowance made by the commissioner for depreciation was proper. The judgment of the trial court should be modified and the case remanded for further proceedings in conformity herewith.