ABKCO Industries, Inc., Petitioner *v.* Commissioner of Internal Revenue, Respondent

Docket No. 4412–67. Filed August 18, 1971.

*Leonard J. Schwartz and Gilbert B. Cramer*, for the petitioners.
*Mary Ann Hagan*, for the respondent.

OPINION

RAUM, *Judge:* 1. The first issue for decision is whether in determining the deficiency in petitioner's 1962 income tax, the Commissioner is entitled to disallow the deduction petitioner claimed on its return for the short taxable period December 22 to December 31, 1961, and thereby reduce the portion of the 1964 net operating loss carryback

available to it in computing its 1962 income tax. Petitioner contends that the statute of limitations has run on the 1961 period and that the Commissioner may not recompute income for a barred period in order to determine the proper net operating loss carryback deduction in an open year. Petitioner urges that by making such recomputation, the Commissioner is attempting to do indirectly what the statute of limitations prohibits him from doing directly.

The Commissioner does not dispute that the 1961 period is closed by the statute of limitations. See sec. 6501(a), I.R.C. 1954. He simply points out that he has not determined a deficiency for that period, that he has recomputed petitioner's short period income only for the purpose of determining its income tax liability for 1962, and that the statute of limitations is not a bar to such recomputation. We agree. The Commissioner's position finds support in section 6214(b), I.R.C. 1954,[2] and in a substantial body of case law. See, e.g., *Dynamics Corp.* v. *United States*, 392 F. 2d 241, 249 (Ct. Cl.); *Phoenix Coal Co.* v. *Commissioner*, 231 F. 2d 420, 421–422 (C.A. 2), affirming a Memorandum Opinion of this Court; *State Farming Co.*, 40 T.C. 774, 781–783;[3] cf. *Anthony Mennuto*, 56 T.C. 910. *Edward G. Leuthesser*, 18 T.C. 1112; *Ione P. Bouchey*, 19 T.C. 1078; and *Bunn's Auto Sales, Inc.*, 35 T.C. 861, relied upon by petitioner, involved deficiency determinations with respect to years which were barred by the statute of limitations. That is not the case here. See *Phoenix Coal Co.* v. *Commissioner*, 231 F. 2d at 422. We have considered petitioner's efforts to distinguish *Phoenix Coal Co., supra,* and to have it overruled. We found them entirely unconvincing, and we uphold the Commissioner's position.[4]

2. The second and principal issue for decision is whether, in the short taxable period December 22 to 31, 1961, and in the calendar years 1962 and 1963, petitioner may accrue royalties computed but not yet paid under paragraph 6 of its agreement with Matz and Evans. Sec-

---

[2] SEC. 6214. DETERMINATIONS BY TAX COURT.

(b) JURISDICTION OVER OTHER YEARS.—The Tax Court in redetermining a deficiency of income tax for any taxable year or of gift tax for any calendar year shall consider such facts with relation to the taxes for other years as may be necessary correctly to redetermine the amount of such deficiency, but in so doing shall have no jurisdiction to determine whether or not the tax for any other year has been overpaid or underpaid.

[3] See also *Morton Q. Petersen*, T.C. Memo. 1971–21, and cases cited therein; *Pacific Transport Co.*, 29 T.C.M. 133, 161–162, P–H Memo. 70–154, 70–186—70–187, on appeal (C.A. 9).

[4] Petitioner has also argued that the Commissioner's disallowance of the $17,973.64 royalty deduction was unjustified on the ground that the Principal Agreement was not executed until Feb. 15, 1962, and did not affect the accrual of royalties in 1961 under the prior agreement. However, the prior agreement was not introduced in evidence. In light of the fact that the burden of proof is upon the petitioner, we cannot simply assume that its liability under such agreement was any more certain than it was under the 1962 instrument.

tion 446, I.R.C. 1954,[5] authorizes the use of an accrual method of accounting, and the Commissioner has not questioned petitioner's status as an accrual method taxpayer. Section 461(a), I.R.C. 1954, provides that "The amount of any deduction * * * allowed by this subtitle shall be taken for the taxable year which is the proper taxable year under the method of accounting used in computing taxable income." Regulations section 1.461-1(a)(2) sets forth the general rule for determining the proper year for deduction by an accrual method taxpayer:

Under an accrual method of accounting, an expense is deductible for the taxable year in which all the events have occurred which determine the fact of the liability and the amount thereof can be determined with reasonable accuracy. * * * While no accrual shall be made in any case in which all of the events have not occurred which fix the liability, the fact that the exact amount of the liability which has been incurred cannot be determined will not prevent the accrual within the taxable year of such part thereof as can be computed with reasonable accuracy.

See also *Security Flour Mills Co.*, 321 U.S. 281, 284; *Dixie Pine Products Co.* v. *Commissioner*, 320 U.S. 516, 518–519; *Lucas* v. *American Code Co.*, 280 U.S. 445, 449–451; *American National Co.* v. *United States*, 274 U.S. 99, 104–105; *United States* v. *Anderson*, 269 U.S. 422, 440–441.

The issue between the parties is thus whether petitioner's liability for royalties under paragraph 6 was sufficiently fixed or determinable to permit accrual during the periods here in question. We conclude that petitioner's liability for such royalties was so contingent and uncertain that accrual is impermissible and that the Commissioner's determination must therefore be sustained.

Under the agreement as originally executed in 1961, petitioner was not required to make any royalty payments at all (in excess of the monthly cash payments under paragraph 5) unless the royalties computed under paragraph 6 exceeded $450,000. During the short 1961 period and the 1962 calendar year petitioner accrued on its books a total of $451,685.64 as royalties under the agreement. However, in

---

[5] SEC. 446. GENERAL RULE FOR METHODS OF ACCOUNTING.

(a) GENERAL RULE.—Taxable income shall be computed under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books.

(b) EXCEPTIONS.—If no method of accounting has been regularly used by the taxpayer, or if the method used does not clearly reflect income, the computation of taxable income shall be made under such method as, in the opinion of the Secretary or his delegate, does clearly reflect income.

(c) PERMISSIBLE METHODS.—Subject to the provisions of subsections (a) and (b), a taxpayer may compute taxable income under any of the following methods of accounting—

 (1) the cash receipts and disbursements method;

 (2) an accrual method;

 (3) any other method permitted by this chapter; or

 (4) any combination of the foregoing methods permitted under regulations prescribed by the Secretary or his delegate.

November of 1962, the agreement was amended so that the $450,000 minimum amount was increased to $575,000. Thus, as of the end of 1962 it remained uncertain whether petitioner would ever be liable for any payments whatever under paragraph 6; royalties computed under paragraph 6 were still approximately $123,000 below the minimum amount which had to be reached before any payments were required under that paragraph.

On its books for 1963 petitioner accrued $187,065 with respect to the Evans contract. Thus, by the end of 1963, petitioner had accrued royalties which exceeded the $575,000 minimum amount by approximately $64,000. However, petitioner's accruals were made on the basis of records *shipped* to wholesale distributors. The formula under paragraph 6, on the other hand, provided for royalties to be computed on the basis of records "paid for and not subject to return." As a result, to the extent that records shipped might not be paid for or might subsequently be returned, petitioner's accruals overstated its liability under paragraph 6. Petitioner and Evans were involved in a highly competitive industry. Sale of Evans' records were dependent upon the public's taste in popular music and there was no assurance that his popularity would continue. Petitioner has not shown that as of 1963, it was unreasonable to expect a significant number of records to be unpaid for or to be returned. Indeed, in its return for the calendar year ending December 31, 1964, petitioner included over $31,000 in income with respect to returns of Evans' records; and on its income tax return for the taxable year ending June 30, 1966, petitioner included in income $82,653 with respect to returns of Evans' records. By March 1, 1967, the time when the first paragraph 6 royalties were to be paid, the figure computed under paragraph 6 might well have been below the minimum amount of $575,000. Thus, as of the end of 1963, it was not clear that petitioner would ever be liable for any payments under paragraph 6. In such circumstances, accrual of royalties described by paragraph 6 was improper. Cf. *Dixie Pine Products Co.* v. *Commissioner*, 320 U.S. 516, 519; *Lucas* v. *American Code Co.*, 280 U.S. 445, 452.

Petitioner has relied heavily upon *Helvering* v. *Russian Finance & Construction Corp.*, 77 F. 2d 324 (C.A. 2), and *Ohmer Register Co.* v. *Commissioner*, 131 F. 2d 682 (C.A. 6). Both cases are distinguishable on the basis of one fundamental point. In *Russian Finance & Construction Corp.*, 77 F. 2d at 327, the Second Circuit emphasized that the expense there in issue was "absolute and fixed, in that no further event was needed to occur to bring it into existence." Similarly, in *Ohmer Register Co.*, 131 F. 2d at 686, the Court pointed out that "the right to deduct an expense item accrues when the fixed obligation is

incurred, even though the amount may be diminished by subsequent events."[6] Here, on the other hand, petitioner has failed to show that it had incurred a fixed obligation under paragraph 6 during the taxable periods in question. No payments were required under that paragraph until royalties, computed on the basis of records "paid for and not subject to return," reached $575,000, and petitioner has failed to show that such minimum figure was reached during the taxable periods here in issue. We sustain the Commissioner's determination.

*Decision will be entered under Rule 50.*

---

[6] *Ohmer Register Co.* must also be read in light of the fact that it was decided in 1942, prior to the Supreme Court's decision in *Security Flour Mills Co.* v. *Commissioner*, 321 U.S. 281, 287, which casts doubt on some of the reasoning in the Sixth Circuit's opinion in *Ohmer.* Cf. 131 F. 2d at 686. See also *Dixie Pine Products Co.* v. *Commissioner*, 320 U.S. 516.