T.C. Memo. 1997-262


UNITED STATES TAX COURT


ROBERT A. READ, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 21250-94.                    Filed June 11, 1997.


LeRoy Boyer, for petitioner.

Donald E. Edwards and Bruce K. Meneely, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, Judge:  Respondent determined a $173,098 deficiency in petitioner's 1984 Federal income tax.

The issues in this case arise out of a claimed net operating loss (NOL) carryback from 1986 to 1984.  The NOL carryback is based on a bad debt deduction claimed by petitioner on his 1986 individual Federal income tax return.  Petitioner's 1986 bad debt

deduction is based upon the alleged worthlessness of his right of subrogation which arose when petitioner was forced to honor a guarantee of his partnership's debt. Thus, resolution of the 1984 deficiency depends upon the validity of the claimed 1986 bad debt deduction.[1]

Specifically, the issues for decision are:

(1) Whether petitioner "paid" a debt from VIP Investors to Security Bank in his capacity as a guarantor during the 1986 taxable year; and, if so

(2) whether an alleged debt from VIP Investors to petitioner, created by the right of subrogation, became worthless during the 1986 taxable year; and, if so

(3) whether the debt which arose by right of subrogation was a business or a nonbusiness bad debt.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioner, Robert A. Read, resided in Tulsa, Oklahoma, at the time he filed his petition.

---

[1] It is well settled that this Court may determine the correct amount of a NOL for a year not in issue as a preliminary step in making determinations for the taxable year or years at issue. Sec. 6214(b); Lone Manor Farms, Inc. v. Commissioner, 61 T.C. 436, 440 (1974), affd. without published opinion 510 F.2d 970 (3d Cir. 1975); ABKCO Indus., Inc. v. Commissioner, 56 T.C. 1083, 1088-1089 (1971), affd. on other issue 482 F.2d 150 (3d Cir. 1973), and cases cited therein.

For the taxable year 1984, petitioner timely filed an individual Federal income tax return.  He also filed two amended 1984 Federal income tax returns dated November 25, 1991, and May 11, 1992.  For the taxable year 1986, petitioner timely filed an individual Federal income tax return.  On his 1986 return, petitioner claimed a business bad debt deduction of $874,177.  Because of the bad debt deduction and other losses not at issue in this case, petitioner claimed a NOL carryback from 1986 to 1984 in the amount of $868,612, as set forth on his second amended 1984 return.  Respondent disallowed the 1986 bad debt deduction and the resulting NOL carryback.

### 1982 $1 Million Loan from Guaranty National Bank

On August 20, 1982, VIP Investors (VIP), an Oklahoma limited partnership, was formed to buy a Sheraton Hotel in Oklahoma City, Oklahoma.  On that date, a limited partnership agreement was signed by the general partner, Terminal Drive Corp. (Terminal), and by the 10 limited partners, one of whom was petitioner.  At that time, Terminal owned 10 percent of VIP, petitioner owned 45 percent, and the other limited partners together owned the remaining 45 percent of VIP.  Also on that date, VIP borrowed $1 million from Guaranty National Bank (Guaranty) in order to purchase the Sheraton Hotel.

### 1984 Loan From Security Bank

On August 1, 1984, Terminal sold its 10-percent interest to petitioner and assigned him its general partnership interest.

Petitioner became the general partner and 55-percent owner of VIP. On October 12, 1984, VIP borrowed $900,000 from Security Bank (Security) and used the proceeds to satisfy the Guaranty loan. A promissory note (the Security note) was signed by petitioner as general partner of VIP. The original maturity date of the Security note was November 15, 1984. At the same time and as part of the loan transaction with Security, petitioner pledged to Security his own certificate of deposit in the amount of $1,025,000 as collateral.

### 1985 Sale to Michael Grossman

On December 31, 1985, over 1 year after the original maturity date of the Security note, VIP sold the Sheraton Hotel to Michael Grossman. Without assuming the Security note, Mr. Grossman gave VIP a promissory note (the Grossman note) dated December 31, 1985, for $708,000, maturing on May 1, 1986. Also on December 31, 1985, Mr. Grossman gave VIP a Replacement Promissory Note (the replacement note) dated December 31, 1985, for $700,000, maturing on September 15, 1986, which he signed as "Michael Grossman, Trustee." The replacement note was given in "renewal + extension" of the Grossman note.

### Note Renewal, Default, and Offset by Security Bank

After the original maturity date on the Security note passed, Security and VIP executed a "Deferral Agreement" several times, extending the maturity date to later dates and providing that the "Lender/Secured Party by acceptance of the interest

payment shown below agrees to extend the Maturity and the Due Date of the Final Payment as follows."  Although it is unclear that the following deferral agreements represent a complete record, each one extended the maturity date of the note as follows:

| Deferral Agreement Dated | Note Extended To |
| --- | --- |
| January 15, 1985 | March 15, 1985 |
| October 28, 1986 | December 15, 1986 |
| March 12, 1987 | May 8, 1987 |
| January 13, 1988 | March 4, 1988 |

Similarly, Security sent a "Note Notice" to VIP several times after the original maturity date of November 15, 1984, calling for interest payments.  Although it is unclear that the following note notices represent a complete record, each one provided a new "Due Date" in response to which petitioner made interest payments as follows:

| New Due Date | Interest Paid |
| --- | --- |
| June 6, 1986 | $6,503.43 |
| July 6, 1986 | 6,028.76 |
| February 2, 1987 | 8,880.40 |
| May 8, 1987 | 11,959.76 |
| June 5, 1987 | 5,278.32 |
| September 1, 1987 | 17,356.19 |
| November 2, 1987 | 12,443.66 |
| March 4, 1988 | 12,538.85 |

Each interest payment resulted in the renewal and deferral of the due date of the Security note.  All of the payments made by petitioner to Security prior to 1989 were for interest only.

Petitioner could not have retrieved his pledged certificate of deposit from Security because the certificate of deposit was

collateral for the loan. On February 27, 1989, Security informed petitioner by letter that on February 2, 1989, the Security loan had matured and the bank was unable to further extend it. The letter stated that the Security loan had not been paid, requested payment, and stated that if payment was not made, the bank would "be compelled to pay off the loans out of the various certificates of deposit which are pledged to secure the loans." Security used the certificate of deposit to pay off the Security note sometime after February 27, 1989.

### Guaranty Agreement

After the transfer of its interest in the Sheraton Hotel to Mr. Grossman, VIP had no assets other than the replacement note. VIP would not have been able to secure the Security loan without posting adequate collateral. Petitioner's certificate of deposit was taken to pay not only the Security note but also two other loans, that of petitioner and of Gemini Management.

### Worthlessness: Year and Existence

Petitioner expected that payments from the replacement note would allow him to pay off the Security note. Although the maturity date of the replacement note was September 15, 1986, petitioner believed that Mr. Grossman was going to pay it within 30 days of the issuance date, in January of 1986. In January of 1986, Security told petitioner that the Security note had not been paid. During 1986, petitioner pursued Mr. Grossman on a regular basis to pay the replacement note; he called Mr. Grossman

and his lawyers, sent Mr. Grossman demand letters, and finally sued Mr. Grossman in March of 1987. No evidence was presented regarding the financial condition of Mr. Grossman except petitioner's oral testimony that Mr. Grossman had no assets and had filed for bankruptcy. The limited partners of VIP believed that Mr. Grossman had assets worth pursuing. Petitioner, as general partner of VIP, attempted to collect on the replacement note through legal action during the year 1986.

On June 22, 1986, petitioner, as general partner of VIP, sent a written notice of default and demand for payment in full of the Grossman note to Mr. Grossman but not on the replacement note. On March 6, 1987, VIP filed a petition in the Oklahoma County (State of Oklahoma) District Court suing Mr. Grossman on the replacement note. On May 26, 1987, Mr. Grossman filed an amended answer alleging, inter alia, that he signed the replacement note to VIP "in his capacity as Trustee, not in a personal capacity, and, if obligated at all, can only be obligated in that capacity." On May 28, 1987, VIP sent Mr. Grossman a request for admissions and interrogatories, and, in his answer, Mr. Grossman stated that he signed the replacement note only in his capacity as trustee for the "Oklahoma City Hotel Joint Venture" (the joint venture).

The joint venture was composed of M&G Financial Corp., Inc. (M&G) and MBG Financial Corp., Inc. (MBG). On September 18, 1987, VIP filed an amended petition to join as codefendants M&G

and MBG.  On November 5, 1987, VIP obtained a default judgement

against M&G and MBG in the amount of $709,660 plus interest.  On

January 9, 1989, VIP filed an affidavit of judgment in the case.

The record, however, is devoid of any evidence regarding the

financial condition of either M&G or MBG.  There was no evidence

that those entities were insolvent or without assets from which

to collect at any time, much less in 1986, the claimed loss year.

                              OPINION

    The issue is whether petitioner is entitled to a NOL

carryback from 1986 to 1984.  The answer to this question depends

upon whether petitioner is entitled to a business bad debt

deduction in 1986 under section 166(a).  That bad debt deduction

stems from petitioner's alleged payment of the Security note that

he guaranteed.  Petitioner claims that he paid the Security note

in 1986 and therefore is entitled to a business bad debt

deduction in 1986.  Petitioner contends, and respondent concedes,

that if petitioner is entitled to a business bad debt deduction

in 1986, then he is entitled to carryback the resulting NOL

pursuant to section 172 to the taxable year 1984, the year in

issue.  Respondent disallowed petitioner's bad debt deduction and

argues that (1) any debt which may have been owed by VIP to

petitioner, due to petitioner's right of subrogation arising from

his guarantee of the Security note,[2] did not become worthless in

------------------------------

    [2]  Although not explicitly stated in any documents in the
                                              (continued...)

the year claimed by petitioner; and (2) petitioner, as guarantor, did not pay the Security note in the year claimed by petitioner, and therefore petitioner is not entitled to a bad debt deduction in 1986.  Because we find that the issue of worthlessness is determinative of petitioner's right to a bad debt deduction in the instant case, we shall address that issue first.

Section 166(a) provides that a taxpayer may deduct any debt that becomes wholly or partially worthless within the taxable year.  Under section 166, worthless business bad debts are fully deductible from ordinary income.  The parties do not dispute the existence of a bona fide debt between VIP and Security; the parties do dispute whether petitioner "paid" VIP's debt as guarantor, and, if so, whether petitioner incurred a debt that became worthless during the 1986 taxable year.[3]

Petitioner bears the burden of proving that the debt became worthless in the year in which it was claimed, that such worthlessness resulted in a NOL, and that the NOL is eligible to be carried back to the 1984 taxable year.  Rule 142(a).  There is

---

[2](...continued)
record, under Oklahoma State law petitioner would have an equitable right of subrogation if he paid the VIP note in his capacity as guarantor.  Moore v. White, 603 P.2d 1119 (Okla. 1979).

[3]  Additionally, if we find that petitioner did pay VIP's debt as guarantor and that the debt became worthless in 1986, respondent argues that such loss is a nonbusiness bad debt, and therefore the loss is a short-term capital loss which does not give rise to a NOL carryback.  See sec. 166(d)(1)(B).

no standard test or formula for determining worthlessness within a given taxable year. <u>Crown v. Commissioner</u>, 77 T.C. 582, 598 (1981). Worthlessness is a question of fact. Sec. 1.166-2(a), Income Tax Regs. A debt becomes worthless in the year in which identifiable events clearly mark the futility of any hope of further recovery. <u>James A. Messer Co. v. Commissioner</u>, 57 T.C. 848, 861 (1972).

In order for us to find that petitioner qualified for a bad debt deduction, petitioner must prove that his right of subrogation against VIP became worthless in 1986, the year in which it is claimed as a deduction. <u>Putnam v. Commissioner</u>, 352 U.S. 82, 85 (1956); <u>Intergraph Corp. v. Commissioner</u>, 106 T.C. 312, 324 (1996); sec. 1.166-9(e)(2), Income Tax Regs. Petitioner has not shown the futility of any hope of recovery under his right of subrogation. After the sale to Mr. Grossman, VIP still had one asset, namely the replacement note. In March 1987, petitioner, after many attempts at collection, had VIP initiate suit against Mr. Grossman in order to collect on the replacement note. In September 1987, VIP amended its petition against Mr. Grossman to include M&G and MBG as defendants. In November 1987, the district court for Oklahoma County decreed that petitioner was entitled to a judgment, jointly and severally, against M&G and MBG in the amount of $709,660[4] plus interest and attorneys

---

[4] Although this amount is less than the amount of the debt
(continued...)

fees.  Additionally, in January 1989, VIP filed an affidavit of judgment against M&G and MBG.  Petitioner offered no evidence of the financial condition of either M&G or MBG.  Recovery of any portion of the $709,660 judgment would have dramatically improved VIP's financial condition.  Given these facts, we cannot conclude that petitioner's right of subrogation was worthless.  Accordingly, petitioner has not carried his burden of showing that he had a debt which was worthless at the end of 1986.

To reflect the foregoing,

<u>Decision will be entered for respondent</u>.

---

[4](...continued)
petitioner claims became worthless, petitioner did not argue, and we need not decide, that the debt was partially worthless.