## COMMISSIONER OF INTERNAL REVENUE v. BROOKLYN RADIO SERVICE CORPORATION.

### No. 31.

Circuit Court of Appeals, Second Circuit.

Dec. 2, 1935.

Frank J. Wideman, Asst. Atty. Gen., Sewall Key and A. F. Prescott, Sp. Assts. to Atty. Gen., A. L. Jacobs, and L. W. Post, both of Washington, D. C., for petitioner.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

On December 28, 1928, the board of directors of the Brooklyn Radio Corporation adopted the following resolution:

"Resolved: That Mr. Benjamin Ginsberg, the President of this corporation receive a salary for the year 1929 the sum of Twelve Thousand ($12,000.00), payable $1,000.00 per month, plus 2% of the net sales for the year 1929, with the understanding however, that such 2% of the net sales be not paid to him as long as the corporation is indebted to Finance Companies on account of its own insufficiency of working capital or to any banks, and in no event until after January 1, 1930, and with the further understanding that said 2% of the net sales to be due to Benjamin Ginsberg be subordinated by him to the indebtedness to all other creditors of this corporation."

The salary of the president of the corporation for the year 1929 as per the above resolution would be computed as follows:

A. Fixed salary............... $12,000.00
B. Salary computed at the rate of 2% of the net sales in 1929 amounting to $1,687,-880.73 .................. 33,757.61

————
$45,757.61

The balance sheet of the taxpayer for the close of the year 1929 showed:

Notes payable, $40,780.97.
Accounts payable, $250,916.77.
Due finance companies, $251,145.28.
Notes receivable discounted, $7,261.57.
Capital, $122,800.
Surplus, $30,694.16.

The proceeding here was reviewed by the whole board, and a majority of the members held that the liability to pay to Ginsberg $33,757.61 as 2 per cent. of net sales for the year 1929 was not a contingent obligation, and in the case of a corporation which reported on an accrual basis was properly attributable to that year. Five members of the board, however, dissented on the ground that the item was not payable as long as the corporation was indebted to finance companies or banks because of its own insufficiency of working capital. The circumstance that the 2 per cent. of net sales when payable to Ginsberg had to be subordinated to the claims of all other creditors of the corporation likewise seemed to be regarded by the minority as a factor of moment.

The dissent was placed upon the ground that during the year 1929 the liability for the 2 per cent. commission remained contingent. It is evident that in the year 1929 it was by no means certain that the commissions would ever be paid unless in the event of liquidation of the company and then only at some unpredictable time and in an amount which could not even approximately be ascertained. The items from the balance sheet show a capital and surplus of only $153,494.16 and obligations in notes, accounts payable due finance companies and banks aggregating $550,140.59. A corporation with such a balance sheet was apparently indebted to finance companies

834

and banks "on account of its own insufficiency of working capital." While the subordination of Ginsberg's commissions to the indebtedness of all other creditors would not necessarily render the claim one which could not be accrued, the subordination bears greatly on the value of the claim when its liquidation is tied up with conditions precluding payment so long as the corporation is indebted to finance companies or banks on account of insufficiency in working capital. How can we say that even in case of final dissolution of the corporation its assets will suffice to pay anything to Ginsberg after taking care of all other creditors? If Ginsberg had attempted to sell his precarious right to receive commissions, it can hardly be supposed that he would have been able to realize any substantial amount seeing that neither the time of payment, nor the amount payable, could be determined even approximately.

In Helvering v. Russian Finance & Construction Corporation, 77 F.(2d) 324, 327, we said that: "The possibility that a present liability may subsequently be discharged by some condition subsequent does not prevent its accrual on the taxpayer's books. The test is whether a taxpayer is justified in entertaining a reasonable expectation that an expense will be incurred." Likewise in Automobile Ins. Co. v. Commissioner of Internal Revenue, 72 F.(2d) 265, 267, we said that the right to accrue income in a certain year depended upon whether the taxpayer "then had and was justified in having a reasonable expectation that payment would be made in due course. Events of later years rendering doubtful collection of an obligation are not relevant to the propriety of accruing the obligation as income of an earlier year." In Commissioner of Internal Revenue v. Old Dominion S. S. Co., 47 F.(2d) 148, 150, we employed substantially the same test. In the last decision cited the taxpayer was allowed to make the deduction, while in the first two, because of the special facts, a deduction was disallowed.

In Field & Start, Inc., v. Commissioner of Internal Revenue, 17 B. T. A. 1206, affirmed (C. C. A.) 44 F.(2d) 1014, certiorari denied 283 U. S. 826, 51 S. Ct. 351, 75 L. Ed. 1440, a deduction for compensation for services rendered by the managers of a corporation was rejected because the claims had not become sufficiently certain to justify the allowance. It is true that in that case there were some important factors other than those we have here which made the claim of the taxpayer even less tenable, but an identical principle precluding deductibility was involved.

In Green Oil Soap Co. v. Reinecke, 36 F.(2d) 599 (D. C.), it had been agreed that the salaries of the officers of the taxpayer should be equalized "at such time as the company should be financially able to pay" the difference, after such equalization, to the officer receiving the smaller salary. The original contract made in 1904 was held to create a contingent liability and to operate only as a possible future obligation. The taxpayer became financially able to equalize salaries in 1919, though the board of directors did not vote the payment to the officer receiving the smaller salary until 1920. Woodward, D. J., decided that the contingent liability became fixed in 1919 and allowed the deduction for that year. The question here is not primarily whether the liability is governed by a condition precedent or subsequent, but whether in the year 1929 the taxpayer "was justified in having a reasonable expectation that payment would be made in due course." Automobile Ins. Co. v. Commissioner of Internal Revenue (C. C. A.) 72 F.(2d) 265, 267. As Brandeis, J., said in Lucas v. American Code Co., 280 U. S. 445, 449, 50 S. Ct. 202, 203, 74 L. Ed. 538, 67 A. L. R. 1010: "Generally speaking, the income tax law is concerned only with realized losses, as with realized gains. * * * Exception is made, however, in the case of losses which are so reasonably certain in fact and ascertainable in amount as to justify their deduction, in certain circumstances, before they are absolutely realized. As respects losses occasioned by the taxpayer's breach of contract, no definite legal test is provided by the statute for the determination of the year in which the loss is to be deducted. The general requirement that losses be deducted in the year in which they are sustained calls for a practical, not a legal, test."

It seems to us quite certain that the liability here is neither "reasonably certain in fact," nor "ascertainable in amount." Furthermore, the company ap-

parently did not regard it as so fixed as to justify entering it on its books within the tax year. This circumstance alone has been treated as having some bearing on the right to claim a deduction. Lucas v. American Code Co., 280 U. S. 445, 451, 50 S. Ct. 202, 74 L. Ed. 538, 67 A. L. R. 1010; Lucas v. Providence Coal Min. Co., 60 F.(2d) 86, 87 (C. C. A. 6). The existence and extent of the liability was in the year 1929 wholly unpredictable and the claim should not have been allowed as a deduction in that year.

The order of the Board of Tax Appeals is reversed, with directions to find the amount of the tax without allowing any deduction for the claim of Ginsberg to commissions, and to determine the deficiency of the taxpayer accordingly.