**The RATH PACKING COMPANY,
Plaintiff,**

v.

**Ernest W. BACON, District Director of
Internal Revenue, Defendant.**

**Civ. No. 6–1589–C.**

United States District Court
S. D. Iowa,
Central Division.

May 4, 1966.

Ross H. Sidney, Des Moines, Iowa, for plaintiff.

D. M. Statton, U. S. Atty., and John G. Milano, Attorney, Department of Justice, Washington, D. C., for defendant.

## MEMORANDUM

STEPHENSON, Chief Judge.

1. This is an action for the refund of federal income taxes, in the amount of $32,743.73 for 1957 and $37,043.69 for 1959, which plaintiff alleges were excessively collected for each of those years.

2. The Commissioner of Internal Revenue disallowed deductions from income claimed by plaintiff for contributions to an Automation Fund for 1959 through 1961 and for interest on that fund in 1961 and 1962. The year 1957 is involved as a result of a net operating loss carryback from 1960. The year 1959 is involved as a result of a claimed deduction in that year and as a result of claimed net operating loss carrybacks from 1961 and 1962.

3. The sole question to be determined is whether or not plaintiff was entitled to deductions from its income for amounts contributed to an Automation Fund during the years 1959, 1960 and 1961, and interest credited thereto in 1961 and 1962.

4. In the event the Court finds that the Commissioner of Internal Revenue erroneously disallowed these claimed deductions, plaintiff is entitled to recover the amounts set forth in paragraph 1, supra, plus statutory interest.

5. The facts were largely stipulated by the parties as follows:

"Plaintiff is incorporated in the State of Iowa and is engaged in the business of meat processing. On October 14, 1959, plaintiff entered into a collective bargaining agreement with the United Packinghouse Workers, Local 46, which said agreement shall be deemed to be a valid and enforceable contract as between the parties and the 'Supplemental Agreement on Automation Fund' is to be considered as an integral part thereof."

6. The "Supplemental Agreement on Automation Fund" provides in part as follows:

"The Company, therefore, agrees with the Union to establish a fund to be administered by a committee of nine, composed of four representatives of Management and four representatives selected by the Union and an impartial chairman selected by mutual agreement of the parties. The Management and the Union shall each pay for the expense of their respective representatives on the committee and the fees and expenses of the impartial chairman shall be paid by the fund. This committee is authorized to utilize the Company contributions to the fund for the purpose of studying the problems resulting from the modernization program and making recommendations for their solution including training employees to perform new changed jobs and promoting employment opportunities within the Company for those affected.

"The committee should consider for appropriate action a program of training qualified employees in the knowledge and skill required to perform new and changed jobs so that the present employees may be utilized for this purpose to the greatest extent possible. The expenditures for such a training and retraining program may be authorized by the committee from the joint fund. It is agreed, however, that the fund shall not be used to increase present severance pay benefits.

"The findings and recommendations of the committee shall not be binding on the parties but shall be made to the Company and to the Union for their further consideration. The final report and recommendations by the committee are to be made no later than six months prior to the termination of the contract.

"The fund to be utilized for the purposes set forth above shall be created by Company contributions made in accordance with the following formula:

"The contributions shall be in an amount equal to one cent for each hundredweight of edible meat products shipped from Waterloo, except to storage. Such Tonnage figures shall be based upon a periodical list of such tonnage presented to the joint committee. The Company's tonnage figures shall be final and binding upon the parties. Contributions shall terminate upon the total of the Company's contributions reaching $135,000.

"An agreed procedure must be established for the disposition of the balance of money remaining in the fund.

"A letter shall be exchanged between the parties setting forth the method and the time for the making of the aforementioned."

7. Immediately thereafter, plaintiff established an Automation Fund on its books of account and credited that Fund with the amounts prescribed by the formula in the above-quoted agreement. In addition, on November 28, 1960, plaintiff agreed with the union to accrue interest on the amount credited to the Fund at the rate of three percent per year. As of August 31, 1961, when the 1959 bargaining agreement expired, the fund totalled $125,296.62. In September, 1961, interest of $4,193.74 was accrued to cover the period September 1959 through August 1961, plus additional interest for that year in the amount of $939.38. Interest was accrued for 1962 in the amount of $3,759.12.

8. As of December 31, 1962, no disbursements had been made from the Automation Fund carried on plaintiff's books. The committee members and impartial chairman called for by the agreement had not been formally constituted.

9. The plaintiff keeps its books and records under the accrual method of accounting and on a calendar year basis. For the years in dispute the plaintiff reported its federal income tax liability under the accrual method of accounting and filed its federal income tax returns on a calendar year basis. As previously in-

dicated, the Commissioner disallowed deductions claimed by plaintiff for contributions to the Automation Fund and interest accrued on that Fund.

10. The parties are agreed as to the general legal principles relevant to this action. They are set out in the applicable Treasury Regulation which provides as follows:

"(2) *Taxpayer using an accrual method.* Under an accrual method of accounting, an expense is deductible for the taxable year in which all the events have occurred which determine the fact of the liability and the amount thereof can be determined with reasonable accuracy. * * *" 26 C.F.R. § 1.461–1(a) (2).

11. The parties are agreed that all the events must have occurred during the taxable year which establish the fact of the liability. A liability does not accrue as long as it remains contingent. Brown v. Helvering, 291 U.S. 193, 200, 54 S.Ct. 356, 78 L.Ed. 725 (1933). The taxpayer contends that the controlling question is whether or not the Automation Fund Agreement created a fixed and certain liability on the part of the plaintiff to contribute an ascertainable amount to the Automation Fund during the taxable years involved. The government contends the controlling question is whether or not the Automation Agreement created a fixed and certain liability on the part of the taxpayer to pay out an ascertainable amount during the years in question.

12. Under the collective bargaining agreement entered into by plaintiff and the Union (Exhibit 1) plaintiff was obligated to contribute to the Automation Fund (Fund) an amount equal to one cent per hundredweight of edible meat products shipped from Waterloo, Iowa, other than storage, up to a total sum of one hundred thirty-five thousand dollars ($135,000) during the contract period. The amount to be contributed could readily be ascertained from the amounts of meat products shipped by the taxpayer in each taxable year. Actually the amounts to be contributed to the Fund were computed and entered on the company books on a monthly basis. This is not disputed by the government.

13. The government insists that since custody of the Fund was left with the taxpayer who commingled the Funds with its general funds without restriction,[1] there can be no deduction. It is claimed that there can be no recognized deduction because there was no actual pay out from the Fund. The government is disturbed because the Automation Committee was not appointed and thus no committee existed to authorize expenditures from the Funds. Further, even if it were constituted, there was no requirement that the committee spend the entire amount set aside for the Fund. Neither was there a prescribed method for disposing of any balance remaining in the Automation Fund.[2] These matters might be of some importance if it were contended that the whole Automation Fund plan was merely a subterfuge for a tax deduction scheme. Such is not the case. The obligation to establish the Automation Fund was created by contract as a result of negotiations between the plaintiff and the Union. Automation had created problems. The contract here followed a pattern set in other agreements in the meat packing industry. At the time the Fund was negotiated in the contract, the parties were not certain what course of action the committee representing the Union and the Company would take in studying the problem developed by automation. The agreement contemplated that funds might be spent for training and retraining programs. Later as a result of other studies, it was concluded that the problems presented by automation were of such magnitude that their solution was beyond the power of the industry acting

1. Other than the requirement that interest be accrued thereon at the rate of 3%.

2. The agreement provided "an agreed procedure must be established for the disposition of the balance of money remaining in the fund."

alone. Thus a study of automation problems was not made by a committee as was contemplated in the Agreement.

14. Initially it should be noted that the subsequent turn of events did not affect the liability incurred by the taxpayer to contribute to the Fund during the years in question. The taxpayer's obligation to establish the Fund was fixed by the contract. The deduction must be viewed in light of the circumstances existing when the contract obligation was incurred. See Helvering v. Russian Finance & Construction Corp., 77 F.2d 324 (2d Cir. 1935); United States v. Detroit Moulding Corp., 56 F.Supp. 754 (E.D.Mich.1944); United Control Corp. v. Commissioner, 38 T.C. 955, 971 (1962). All of the events which determined the fact of taxpayer's liability and the amount thereof were determined during the taxable years in question. The mere fact that taxpayer retained custody of the Fund is immaterial.[3] The amount of taxpayer's liability was determined by the edible meat products shipped from Waterloo and not by actual or estimated pay-outs from the Fund as urged by the government. The taxpayer complied with the terms of the contract and set up the Fund on its books and accumulated the funds as required, and agreed to pay interest thereon. No claim is or was made by the taxpayer or the Union that payments to the Fund was contingent or dependent on a committee approved program of expenses. Compare Dixie Pine Prods. Co. v. Commissioner of Internal Revenue, 320 U.S. 516, 64 S.Ct. 364, 88 L.Ed. 270 (1944); Security Flour Mills Co. v. Commissioner of Internal Revenue, 321 U.S. 281, 64 S.Ct. 596, 88 L.Ed. 725 (1944). Rather, it is agreed that the liability for the Fund and the amounts thereof were determined by the contract and edible products shipped during the period.

15. The Court finds that the Commissioner of Internal Revenue erroneously disallowed the deductions from income claimed by plaintiff for contributions to an automation fund for 1959 through 1961 and for interest on that Fund in 1961 and 1962.

16. The foregoing shall constitute the Court's findings of fact and conclusions of law. Judgment will accordingly be entered for plaintiff. Plaintiff will submit an appropriate order for judgment.

---

3. As a practical matter the Fund remains for distribution by agreement of the par-  ties for the benefit of the Union membership.