## LUKENS STEEL COMPANY, PETITIONER *v* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4779–66.    Filed August 7, 1969.

*Seymour S. Mintz* and *Robert H. Kapp*, for the petitioner.
*Albert J. O'Conner*, for the respondent.

[1] The prescribed levels were percentage figures determined by comparing the total finances of the SUB plan to an amount determined to be "maximum financing" of the SUB plan. The term "maximum financing" is defined in fn. 2, *infra.*

768

770

773

776

KERN, *Judge:* In 1956 petitioner Lukens Steel Co. entered into a labor agreement with the United Steelworkers of America, under which petitioner agreed to establish a supplemental unemployment benefit plan. The purpose of the plan was to provide benefits, in addition to those under State unemployment-benefit programs, to certain of petitioner's employees who were laid off during periods of reduced production which recur cyclically in the steel industry. The amount of petitioner's total obligation under the 1956 SUB plan was determined by reference to the labor hours worked by its "eligible employees" during each of petitioner's thirteen 4-week yearly accounting periods, subject to limitations designed to prevent the total finances of the plan from exceeding prescribed maximum levels, i.e., "maximum financing." The 1956 SUB plan was financed in part by periodic cash payments made by petitioner to a trust and in part by a contingent liability, a promise made by petitioner to pay certain amounts to the trust in the event that the trust assets were insufficient to permit payment of unemployment benefits.

The rate of petitioner's monthly contributions to the 1956 SUB plan was set at a maximum 5 cents per hour worked each month by eligible employees, 3 cents per hour to be paid in cash and 2 cents per hour to be credited to a contingent liability account from which payments were to be made as circumstances required. If in any accounting period contributions of less than 5 cents per work hour were necessary to provide maximum financing the contingent liability portion of petitioner's contribution for that accounting period was reduced accordingly. If contributions of less than 3 cents per work hour were needed, no additions to the contingent liability mentioned above were required to be made and petitioner was only obligated to make reduced cash payments to the trust. During the term of the SUB plan agreement the contingent liability was cancelable in part at such times as, and to the extent that, the total finances exceeded maximum financing and, upon termination of the plan on July 31, 1959, any remaining contingent liability was then cancelable in full. However, as a result of collective bargaining in 1959 and 1960, the balance of contingent liability which had been canceled was restored as a SUB plan asset until December 31, 1962.

To be eligible for benefits under the 1956 SUB plan an employee must have been laid off before he quit, struck, or was discharged, and he must have been continually employed for 2 years prior to such layoff. An employee must have had an available "credit unit" to qualify for each weekly benefit, and, if laid off, must have reported in person weekly at a time and place designated by petitioner and, when applying for benefits, must have received State unemployment benefits or have been able to work.

Thus, under the 1956 SUB plan or contract, which was to last for 3 years and which was extended without material change for another 3-year period, the liability of petitioner to make payments to the fund or trust set up pursuant to the plan which were in excess of the cash payments called for was limited to the period of the existence of the plan and the amount, if any, of the liability depended on the payouts made by the trust to the individual employee beneficiaries of the plan and the time and amount of payouts to these individual employees were contingent upon the happening of certain events which might occur in years subsequent to the year in which the credits were made to the contingent liability account. Accordingly the nature of the obligations of petitioner with regard to these contingent liabilities conformed to their nomenclature. There was no certainty of liability in connection with these so-called contingent liabilities and consequently they were not subject to accrual since all the events had not occurred during the taxable years which determined the petitioner's liability and fixed the amount thereof. See *United States* v. *Anderson*, 269 U.S. 422; *Transcalifornia Oil Co., Ltd.*, 37 B.T.A. 119, 126. Petitioner did not accrue these contingent liabilities under the 1956 SUB plan and makes no contention that they are accruable expenses.

In 1962 the employment contract between petitioner and the Steelworkers Union provided for a SUB plan which differed in several material respects from the 1956 SUB plan in that the 1962 SUB plan broadened and increased the benefits to the employees and altered the method of financing the plan. The employee eligibility requirement provisions in the 1956 SUB plan were again adopted in the revised 1962 SUB plan with only a few minor changes. As in 1959, the balance of petitioner's contingent liability under the 1956 SUB plan on June 30, 1962, the last day the 1956 SUB plan was in effect, was carried forward as a 1962 SUB Plan Trust asset and treated as contingent liability under the 1962 SUB plan.

Under the 1962 SUB plan, cash and contingent liability were to be contributed to the plan by petitioner to the extent of the lesser of either 9.5 cents per hour worked by covered employees (rather than 5 cents per hour as under the 1956 SUB plan) or an amount which when added to the total finances of the plan would equal maximum financing of the plan.[6] Further changes were made in the 1962 SUB

---

[6] In addition the 1962 SUB plan provided that contingent liability, to the extent that it was not needed to achieve maximum financing of the SUB plan and in an amount not to exceed 4.5 cents per hour worked by employees covered by the savings and vacation plan, shall be added to financial availability account of the savings and vacation plan in an amount which would cover employee benefits accumulated under that plan. Amounts of Contingent Liability not utilized by the savings and vacation plan in the manner stated above were to be returned to the SUB plan to be made available for SUB plan benefits and also for future savings and vacation plan benefits to the extent assets or credit available to the savings and vacation plan financial availability account were insufficient to finance accumulated employee benefits. The contingent liability amounts so returning to the SUB plan were to be ignored in calculating petitioner's periodic obligaton to make payments or credits to the SUB plan.

plan in the method of determining the respective portions of petitioner's monthly obligation which would be paid in cash by petitioner to the SUB Plan Trust or which would be credited by petitioner as contingent liability to the plan on its books. As a result of these new financing arrangements it was anticipated that the plan would be funded exclusively with "Contingent Liability" within a few years after the 1962 SUB plan had been in effect and, in fact, the assets of the SUB Plan Trust were entirely exhausted and the plan was funded exclusively with "Contingent Liability" before the end of petitioner's 1963 fiscal year.

As under the 1956 SUB plan, the 1962 SUB plan contingent liability was made payable to the SUB Plan Trust when needed to pay the agreed-upon benefits. However the 1962 SUB plan contained additional agreements to assure the Steelworkers Union that amounts credited to the contingent liability account would be noncancelable and would always be potentially available to petitioner's union employees. As under the 1956 SUB plan, amounts credited to the contingent liability account were to be paid into the SUB Plan Trust when the trust has insufficient cash on hand to meet current supplemental-employee benefits. But it was further provided in the 1962 SUB plan that, upon termination of the plan, both the assets then remaining in the trust fund and the credit remaining in the contingent liability account should be subject to all of the applicable provisions of the plan as in effect at termination and should be used until exhausted to pay benefits to the employees in order of their entitlement. In addition it was provided that if the operations of petitioner were to be permanently shut down, disposition of both the assets in the trust fund and the balance in the contingent liability account was to be made in a manner designed to promote the purposes of the SUB plan later to be agreed upon at that time by petitioner and the Steelworkers Union.

Thus under the 1962 SUB plan, petitioner's obligation to make the payments to the trust was no longer contingent on the payouts made during a specified limited period by the plan or trust to the individual employees which payouts were themselves contingent on certain events. Quite deliberately, and as a result of hard bargaining concerning this very point, the representatives of petitioner and of the union agreed that certain amounts calculated with reference to events happening within the taxable years and in excess of the cash payments required in those years would be paid in future years to the SUB Plan Trust or to some other fund set up under the contract with the union for the benefit of the petitioner's employees. Accordingly the existence of petitioner's liabilities and the amount thereof were fixed during the taxable years even though the time of payment was not. While the time when payments were to be made to the trust from the contingent

liability account depended on the rate of payouts of SUB plan benefits, both petitioner and the union reasonably anticipated that the amounts credited by petitioner to the plan as contingent liabilities during the taxable years would be required, on a "first-in first-out" approach, to be paid by petitioner to the trust within a few years,[7] and that any balance in the contingent liability account would be ultimately paid in full to or for the benefit of petitioner's employees. Regardless of these new provisions of the 1962 SUB plan and the fact that the parties intended and their contract provided that the amounts so determined should be ultimately paid out by petitioner for the benefit of its employees—the members of the contracting union—the obligations to make these payments continued to be referred to as contingent liabilities.

The contract was executed by petitioner and representatives of that group of its employees who belonged to a certain union and the payments were to be made to a fund or trust of which the members of this group as of certain times and possessing certain qualifications were to be beneficiaries. They were to be made by petitioner to the trust for the primary purpose of financing a plan for the payment of unemployment benefits by the trust to petitioner's employees and the amounts of petitioner's liabilities were determined by events occurring in the taxable years. To the extent not needed for maximum financing of this fund, payments from this contingent liability account were to be made as needed to an employee savings and vacation fund. In no event could the contingent liability be canceled by petitioner. To the contrary any balance remained payable for the benefit of the employees in the full amount accrued. They were not to be made directly to the employees and they were not contingent with regard to existence or amount on the occurrence of events in subsequent years as in *Tennessee Consolidated Coal Co.*, 15 T.C. 424; *Morrisdale Coal Mining Co.*, 19 T.C. 208; *Turtle Wax, Inc.*, 43 T.C. 460; and *Oberman Manufacturing Co.*, 47 T.C. 471. In this case the amounts of the contingent liability accrued by petitioner were fixed by events occurring or facts existing before the end of the taxable years and the ultimate payment of those amounts by it was "reasonably certain in fact." Cf. *Commissioner* v. *Brooklyn Radio Service Corp.*, 79 F. 2d 833, 834.

Thus we have in the instant case a liability fixed as to existence and amount by reference to facts existing during the taxable years with its ultimate payment reasonably certain in fact but indeterminate

[7] Assuming that at a given moment in time the total finances of the 1962 SUB plan equaled $900,000 and the average yearly employee-benefit payments to be paid from the plan (and contributions to be credited to the plan) was anticipated to be $450,000 per year, then using a "first-in first-out" approach, it could be anticipated that all of the $900,000 total finances of the plan at that moment of time would be used up to pay employee benefits within 2 years ($900,000÷$450,000 per year).

during the years of accrual with regard to the ultimate recipients' exact shares of the accrued amounts and with regard to the times of actual payouts, the latter being dependent on the reasonably anticipated occurrence of economic events.

The facts of the recent case of *Washington Post Co.* v. *United States*, 405 F. 2d 1279 (Ct. Cl. 1969), are quite similar to those of the case before us. In that case the court held that "when a 'group liability' is involved, it is the certainty of the liability which is of utmost importance in the 'all events' test, and not necessarily either the certainty of the time over which the payments will be made or the identity of the payees." See also *Avco Manufacturing Corp.*, 25 T.C. 975, 999–1011; *United Control Corporation*, 38 T.C. 957; *Willoughby Camera Stores, Inc.* v. *Commissioner*, 125 F. 2d 607 (C.A. 2), reversing 44 B.T.A. 520; and *Rath Packing Co.* v. *Bacon*, 255 F. Supp. 809 (S.D. Iowa).

In our opinion the rationale of these cases is applicable to the case before us and requires a decision in favor of petitioner.

A summary of respondent's principal argument to the effect that no expenses can be accrued by petitioner for the taxable years on account of credits to the contingent liability account is as follows: Even though payments to petitioner's employees be considered as earned by them during each of the taxable years (a fact which respondent does not concede) and the liability to make such payments may be considered "noncancelable," such payments are to be made in subsequent years and only if an employment relationship then exists; this requirement is a condition precedent; the payments to be made to the trust or fund set up by the SUB plan which are chargeable to the contingent liability account depend on the insufficiency of cash in the fund to meet its current benefits payments; and since the latter payments are subject to a condition precedent, the payments chargeable to the contingent liability account must be considered as subject to a condition precedent. Respondent concludes that the items here in question are contingent expenses not subject to accrual. Respondent also contends that petitioner has failed to prove "that a reasonably accurate estimate of future expenditures under the plan has or can be made" and even if this estimate had been proved no deduction under an accrual method of accounting would be made of any reserve for future estimated expenditures. In connection with this latter phase of his argument respondent cites *E.W. Schuessler, et ux*, 24 T.C. 247, revd. 230 F. 2d 722 (C.A. 5), and *Bressner Radio, Inc.*, 28 T.C. 378, revd. 267 F. 2d 520 (C.A. 2). Respondent also suggests that the reasoning in *American Automobile Association* v. *United States*, 367 U.S. 687, and *Schlude* v. *Commissioner*, 372 U.S. 128, is apposite to his argument.

With regard to the latter phase of respondent's argument we disagree with his interpretation of the facts and with his contention that the principles underlying the cited cases are applicable to the instant

case. The creation and existence of an accrued liability in the instant case does not depend upon an estimate of anticipated future expenditures. The only estimate pertinent to the instant case concerns the question of whether it can reasonably be anticipated that an existing liability will be paid. Our consideration of the record before us leads us to the conclusion we have already stated, that the ultimate payment by petitioner of the amounts charged by it to the contingent liability account and deducted by it as accrued expenses was reasonably certain in fact.

With regard to respondent's principal argument we have already indicated our disagreement. In our opinion the certainty of petitioner's liability under the SUB plan of 1962 is such as to justify its accrual during the taxable years in spite of any uncertainty as to the time over which payments ("reasonably certain in fact") will be made under this liability and in spite of any uncertainty as to the specific identity of the individual employees of petitioner ultimately receiving payment of the benefits paid. See *Washington Post Co.* v. *United States, supra.*

*Decision will be entered under Rule 50.*