**GRAND AVE. MOTOR COMPANY,**
**Plaintiff,**

**v.**

**The UNITED STATES of America,**
**Defendant.**

**Civ. No. 2230.**

United States District Court,
D. Minnesota, Third Division.

Sept. 20, 1954.

Faricy, Moore & Costello and William A. Bierman, St. Paul, Minn., for plaintiff.

George E. MacKinnon, U. S. Atty., and Alex Dim, Asst. U. S. Atty., St. Paul, Minn., for defendant.

BELL, District Judge.

The plaintiff, an automobile dealer conducted its principal place of business in

Saint Paul, and a branch of its business in rented quarters in Rochester, Minnesota, during 1942. During the last eleven months of 1942 Plaintiff occupied the rented quarters at Rochester under a lease which provided that plaintiff should have:

"the said premises * * * for the term of five years from February 1, 1942, for the purpose of auto sales and service, yielding and paying therefore the rent of Five Hundred Fifty ($550.00) Dollars per month for each and every month during the full term of this Lease, payable at the office of Lessor in Rochester, Minnesota, as follows: $275.00 on February 1, 1942, and $275.00 on the first day of each consecutive month until Ford Motor Company or any company, corporation, co-partnership, association or individual producing motor cars sold or distributed by Young Motor Car Co., resumes production of motor cars and as soon as Ford Motor Company or any company, corporation, co-partnership, association, or individual resumes production of motor cars sold or distributed by Young Motor Car Co., the payments shall be $687.50 on the first day of each consecutive month, plus 3 per cent of gross sales of the Rochester, Minnesota, branch of Young Motor Car Co. over $525,000.00 per year, until the full amount of rent at $550.00 per month is paid in full and thereafter the payments shall be $550.00 on the first day of each consecutive month until the termination of this lease."

Since the production of motor cars was not resumed until a time subsequent to 1942, the plaintiff paid in cash $275 per month during the last eleven months of 1942 but accrued on its books for that period the full rental of $550 per month. Plaintiff's rental deduction on its 1942 Federal income tax return reflected its accrual for the last eleven months of 1942 of the full rental of $550 per month specified by the lease.

Subsequently the plaintiff transferred its Rochester, Minnesota business to another concern in exchange for stock of the latter concern. The deferred unpaid balance of the full rental accrual of 1942 was treated by both parties to this transaction as an existing liability of the plaintiff and reduced the amount of stock to which the plaintiff became entitled.

On audit of the plaintiff's return for 1942 the Commissioner of Internal Revenue determined that the plaintiff could only claim a rental deduction for the last eleven months of 1942 in the amount of $275 per month. Accordingly, a deficiency was assessed against and paid by plaintiff. Thereafter plaintiff filed appropriate claim for refund and, the refund claim not having been acted upon within six months, commenced this action.

The single issue presented is whether the plaintiff is entitled to a deduction for the said eleven months of 1942 of the entire $550 monthly rental specified by its lease or whether such deduction must be limited to the $275 per month actually paid within the year.

Both parties submitted briefs covering the general principles of income tax accounting and law governing the action. Although there are many authorities relating to accrual of deductions, it appears that the parties were in substantial agreement as to the general principles involved.

In O.D. 794 (Cum.B.No. 4, June 1921, page 141), the Treasury ruled that rent deferred to be paid at a time substantially subsequent to the occupancy period to which the rent related was deductible by an accrual basis taxpayer in computing its tax liability for the occupancy year. There seems to be no doubt of the correctness of this as a general proposition, and the defendant does not dispute it.

The case of Helvering v. Russian Finance & Construction Corp., 2 Cir., 77 F.2d 324, 327, (cited both by plaintiff and defendant) contains a fair general statement of the applicable basic principles:

" * * * In order to be accruable in the taxable year for which the return is made, a valid obligation to pay must have existed in that year, which is enforceable on the date when the obligation is due. * * *

" * * * When books are kept on accrual basis, a presently existing obligation which, in the normal course of events, the taxpayer is justified in believing he must fulfill, may be accrued. The existence of an absolute liability is necessary; absolute certainty that it will be discharged by payment is not. Spring City Foundry Co. v. Comm'r, 292 U.S. 182, 54 S.Ct. 644, 645, 78 L.Ed. 1200. * * *"

The statement of the Board of Tax Appeals of interest and importance in Transcalifornia Oil Co., Ltd., 1938, 37 B.T.A. 119, 127 is important:

" * * * By agreement with the landowners, the petitioner was allowed to defer payment of such claims until after its more pressing debts were paid. The respondent does not question the petitioner's right to deduct all accruable debts from its gross income, but argues in his brief that 'Because the royalty was waived until creditors were paid * * * the payment of the amount by petitioner was uncertain and could not be an accrued liability until the condition of the corporation was such that there was at least some certainty that the amount would be paid.' There is no merit to this argument. The accruability test of a debt is not certainty of payment, but rather certainty of its liability, and a taxpayer on the accrual basis can not defer deductions for a debt which becomes fixed in a given year to a subsequent year."

The basic propositions guiding this court are also stated in the following quotation from United States v. Anderson, 269 U.S. 422, 440, 46 S.Ct. 131, 134, 70 L.Ed. 347, and cited and urged by both plaintiff and defendant as supporting their case:

"Only a word need be said with reference to the contention that the tax upon munitions manufactured and sold in 1916 did not accrue until 1917. In a technical legal sense it may be argued that a tax does not accrue until it has been assessed and becomes due; but it is also true that in advance of the assessment of a tax, all the events may occur which fix the amount of the tax and determine the liability of the taxpayer to pay it. In this respect, for purposes of accounting and of ascertaining true income for a given accounting period, the munitions tax here in question did not stand on any different footing than other accrued expenses appearing on appellee's books. In the economic and bookkeeping sense with which the statute and Treasury decision were concerned, the taxes had accrued. * * *"

It thus appears, and seems agreed by both parties, that a liability may not be accrued unless the amount is fixed and the fact of the liability is determined with certainty, although absolute certainty of payment is not required. It is also clear that the terms "fixed" and "determined", as so used are not synonymous with "presently payable."

The question then is whether the plaintiff's liability to pay $550 per month rent was so fixed and determined during the year 1942, having in mind particularly the dictate of the Supreme Court in the Anderson case that the Statute and Regulation are concerned with "the economic and bookkeeping sense" of the matter of accruals. Under the terms of the lease and the applicable facts before the court, there was a valid obligation, the amount of which was fixed, and the fact of liability for which was determined, sufficient to justify an accrual. In so concluding, I have been guided by the following considerations, among others:

The lease itself states initially and directly that the rent is: "($550) per month for each and every month during the full term of the lease". This repre-·

426

sents a definite fixing of the amount and a determination of the fact of liability. The provisions of the lease which follow such fixing of the rent, and which simply specify the time and manner of payment, do not purport to change the amount of rent or to fix a different amount of rent. It is obvious that such provisions merely are to provide when and how the rental obligation, already fixed at $550 per month, shall be paid. The parties could have provided that the rent should be $275 per month until stated conditions might occur and a different amount thereafter. The fact that they have not done so, but have specified a definite monthly rental of $550 is not only consistent with, but indicative of, an intention to postpone payment of a part of the rent but not to forego such payment. It thus is clear that the lease is correctly interpreted as requiring payment of the balance of the accrued rental obligation at such time as, under given circumstances, the time of payment provisions specify, or, in the event of circumstances not specifically covered, within a reasonable time.

It is not necessary, however, to rely on such interpretation of the meaning of the lease. If it be assumed that the lease did not require full payment in the event production of motor cars sold by plaintiff was never resumed, a proper case for an accrual would nonetheless exist. In such case the eventuality which might defeat payment would be of the nature of those which did not prevent accruals in the Russian Finance case cited above and other cases of like import.

■ There is also the fact that the plaintiff and the corporation to which plaintiff disposed of its Rochester assets considered and treated the accrual as a fixed and existing obligation. The independent practical construction of a contract, by a party to such contract, bears upon the meaning to be accorded to it. Further such independent treatment of the obligation by the plaintiff makes clear that this was not a case where an accrual was claimed without a reasonably certain and honest expecta-

tion on the part of the taxpayer that payment would be required to be made. To paraphrase the Court in the Russian Finance case [77 F.2d 327] this clearly falls into the category of an obligation which " * * * in the normal course of events, the taxpayer is justified in believing he must fulfill * * *."

The object of the accrual method of accounting is to arrive at a realistic figure for the operations of a given year. To achieve this objective, rent for occupancy in 1942 ought reasonably to be charged against income of 1942. Thus, the rental payments in the full amount claimed are properly deductible as an accrual. The contrary view would have an unrealistic and artificial effect and would tend to distort income figures for the year of occupancy and subsequent years.