**ABKCO INDUSTRIES, INC., Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE.**

**No. 72–1181.**

United States Court of Appeals, Third Circuit.

Aug. 21, 1973.

For majority opinion see 3 Cir., 482 F.2d 150.

DITTER, District Judge (dissenting):

The problem in this case should be viewed on the basis of business realities rather than contract subtleties: Harrold v. Commissioner of Internal Revenue, 192 F.2d 1002, 1006 (4th Cir. 1951).

In 1961 ABKCO, a recording company, and Evans, a popular artist, entered into an agreement under the terms of which Evans was to receive monthly payments of $7500. for five years. In the event that the total royalties [1] on the net sales of Evans' records exceeded the total monthly payments, the difference was to be paid to Evans at the end of the contract period. Later the contract was modified so that the monthly payments were increased to $10,000. In 1962 and 1963, ABKCO accrued on its books $433,-712 and $187,065, respectively, for royalties payable to Evans.

During the later years of the contract, Evans' popularity declined and the sales of his records did not produce sufficient royalties to equal the monthly payments still being made to him. His royalties account was then charged and these charges were treated as income by ABKCO. To the extent that the royalties for 1962 and 1963, $433,712 and $187,-065, exceeded the monthly cash payments to Evans in those years, these deductions were disallowed by the Commissioner of Internal Revenue and the Tax Court.

In arriving at its conclusion, the Tax Court said ABKCO's contract with Evans provided two separate methods of compensation: (1) monthly payments, and (2) royalties less monthly payments. ABKCO's deductions of amounts credited to Evans' for the royalties less monthly payments were held to be contingent because ABKCO credited his account on the basis of records shipped knowing that some records would be returned, and, in fact, in 1964 and again in 1966, more records were returned than were shipped so that Evans account had to be charged for royalties credited to him in prior years.

Well established principles are applicable here:

(1) Deductions are allowable for the taxable year in which all the events have occurred which establish the fact of liability if the amount thereof can be determined with reasonable accuracy: Treas.Reg. § 1.446–1(c)(1)(ii). Mathematical certainty is not required: Gillis v. United States, 402 F.2d 501, 506 (5th Cir. 1968).

(2) A taxpayer may adopt such accounting methods as are, *in his judgment,* best suited to his needs, so long as these procedures clearly reflect his annual income, are consistent, and are in accordance with generally accepted accounting principles: Treas.Reg. § 1.-446–1(a)(2).

(3) Deductions attributable to the business of a particular year must be applied against the income they help to create, and not against that of a subsequent year in which payment made: Helvering v. Russian Finance & Construction Corporation, 77 F.2d 324, 328 (2nd Cir. 1935). What the statute seeks is an accounting method that most accurately reflects the taxpayer's income on an annual accounting basis: Schuessler v. Commissioner of Internal Revenue, 230 F.2d 722, 724 (5th Cir. 1956).

---

1. The royalties were to be five per cent of records produced to be sold, that is, 90% of all records produced. Apparently, industry experience has shown that ten per cent of all records produced will not be sold: they will be used for promotional purposes, be returned by distributors, etc.

In the case at bar, there is no question about the fact of liability: the taxpayer was obligated to pay money to Evans. This responsibility is undisputed and unaffected by any provision that dealt with when payment was to be made, the conditions that might reduce liability, and the ultimate amounts of such payments. The only question between Evans and the taxpayer was how much money would be payable to Evans and the only issue between the Commissioner and the taxpayer is the reasonableness of taxpayer's computations of its liability to Evans. If those deductions were reasonable, based on the information then available to taxpayer, they should be allowed. As this Court has pointed out, mathematical precision is not required of a taxpayer who accrues deductions: Denise Coal Company v. Commissioner of Internal Revenue, 271 F.2d 930, 936 (3rd Cir. 1959).[2]

To reach its decision, the Court below split the provisions of ABKCO's contract into two segments, the one calling for monthly compensation and the one calling for royalty payments. It then examined the latter on the basis of some of the events which occurred as late as 1966 and concluded the 1962 and 1963 royalty payments were contingent. In other words, judicial hindsight was liberally applied to a part of the facts to interpret part of the agreement.

As I view it, ABKCO's deductions were properly taken—the business realities known to the taxpayer in 1962 and 1963 were far more important than the legal niceties of the contract. Here the ultimate liability to Evans went hand in hand with the sales of his records. At the time in question, his popularity had increased to such an extent that his royalties for 1962 and 1963 averaged more than $25,000 a month on a contract which guaranteed him only $10,000 a month. In the absence of some *known* factor that would wipe out this obligation to Evans, the most accurate way for the taxpayer to indicate its yearly income was to accrue Evans' royalties on a yearly basis. This is exactly what ABKCO did.

The Tax Court's approach to this matter is wrong for a variety of reasons.

In the first place, the contract was cut into pieces which were examined separately. It should have been considered as one document, with interrelated, interdependent provisions. Secondly, it was error to ignore the taxpayer's treatment of the obligations created by the agreement. The independent practical construction of a contract by a party bears upon the meaning to be accorded it for tax purposes: Grand Avenue Motor Company v. United States, 124 F.Supp. 423, 426 (D.Minn.1954). Thirdly, the matter is one of good accounting practice, and principles accepted in particular businesses, as much as it is a matter of contract law.[3] The propriety of these deductions from the standpoint of accounting principles was not discussed by the Tax Court.

---

2. In *Denise*, the taxpayer was engaged in strip mining. As one of its costs, it accrued estimates of the amounts it would be required to spend in future years for land rehabilitation. The Tax Court's decision that these expenses were too speculative was rejected by this Court.

3. Treas.Reg. § 1.446–1(a)(2) says: " . . . A method of accounting which reflects the consistent application of generally accepted accounting principles *in a particular trade or business* in accordance with accepted conditions or practices in that trade or business will ordinarily be regarded as clearly reflecting income, provided all items of gross income and expense are treated consistently from year to year." (emphasis added) When evidence of industry practice was offered, the Learned Hearing Judge said " . . . I will not preclude you from presenting this evidence to the Court, and let you attempt to make anything out of it that you think you can, but I think I must caution you that it is probable that you can make very little of [sic] anything out of it. The problem is, under this contract, . . . and there are many points in the law where commercial accounting practices do not coincide with the accounting permissible under the tax laws, so with full awareness of the difficulties and pitfalls that face you, I will let you go ahead." Appendix, p. 49.

Fourth, the Tax Court took facts, record-returns in 1964 and 1966,[4] which if relevant for any purpose, dealt with the *amount* of liability and used them as a basis for concluding there was *no* liability to Evans. In other words, the Court found that ABKCO had overestimated the amount due Evans and from this decided that nothing was due. Of course, the fact of liability and the amount of liability are distinct concepts —and if the amount of liability is overstated it is unreasonable and should not be allowed. It does not follow that there is no liability at all. Treas.Reg. § 1.461 (a)(2) contemplates that taxpayers on an accrual basis may have to make adjustments and such adjustments are permitted. The possibility that the amount of a fixed obligation may be diminished by later events does not render the obligation contingent: Gillis v. United States, supra, 402 F.2d 508–510.

Fifth, the Tax Court's rationale is faulty because it considers the royalty value of records-returned in a vacuum— in effect, it says since some records were sent back by distributors all royalty deductions were contingent and therefore improper. If the records-returned figures are significant at all, they must be matched against the value of records shipped to see if the taxpayer's deductions were reasonable.[5] This was not done. Instead the Court merely cites the royalty value of returned-records in 1964 and 1966, $31,000 and $82,653, respectively, as proof that taxpayer had no obligation to Evans for 1962 or 1963.

Sixth, the figures for records returned in 1964 and 1966 should not have been considered by the Tax Court at all. ABKCO had no facts in 1962 and 1963 to indicate that Evans' popularity would fall off in 1964. The validity of these deductions should not be determined by what the Tax Court now knows, but on the basis of what ABKCO knew or should have known when it completed its returns for 1962 and 1963. In light of the high sales of Evans' records in the years in question, there is no basis to conclude that the taxpayer could expect a return of records in a subsequent year in any significant quantity. It would appear to me, therefore, that the taxpayer has estimated its liability with reasonable certainty. Any overstatement was minimal at most and capable of adjustment in subsequent years, as allowed by Treas. Reg. § 1.461–1(a)(2). Equally important is the fact that the records returned in 1966 might have been shipped in 1964 or 1965—and therefore would have no bearing on the accuracy of the 1962 or 1963 tax returns.

The taxpayer here is *admitting* its liability to Evans and denying the contingency of its obligation. This is not a case in which the taxpayer contests a liability while simultaneously accruing it for tax purposes. *Cf.* Security Flour Mills Co. v. Commissioner of Internal Revenue, 321 U.S. 281, 64 S.Ct. 596, 88 L.Ed. 725 (1944); Dixie Pine Products Co. v. Commissioner of Internal Revenue, 320 U.S. 516, 64 S.Ct. 364, 88 L.Ed. 270 (1944); Lustman v. Commissioner of Internal Revenue, 322 F.2d 253 (3d Cir. 1963). That such cases are clearly distinguishable from this case is evidenced by the special treatment afforded the

---

4. At the time of the hearing before the Tax Court, ABKCO offered to show for each year, not just 1964 and 1966, the value of Evans' records shipped and the value of Evans' records returned by distributors. The Court indicated this evidence would have little probative force because a consideration of matters occurring in subsequent years would "destroy the whole concept of the annual system of accounting." Appendix, pp. 39–41. The taxpayer then withdrew the witness who was to supply this data.

5. For 1964, Evans' royalty account was charged with $31,000. for records returned by distributors as unsold. In prior years he had been credited with royalties for records shipped as follows:

| Year ending | |
|---|---|
| December 31, 1961 | $ 17,973.64 |
| December 31, 1962 | 433,712.00 |
| December 31, 1963 | 187,065.00 |
| Total | $638,750.64 |

Thus, the charge back in 1964 amounted to less than five per cent of the prior years' royalties.

former under the Code and its corresponding regulations. 26 U.S.C. § 461 (f); Treas.Reg. § 1.461–2. While I recognize that deductions for accruals are not allowed just because a taxpayer admits a liability, Peoples Bank and Trust Co. v. Commissioner of Internal Revenue, 415 F.2d 1341 (7th Cir. 1969); Filed Enterprises, Inc. v. United States, 348 F.2d 485, 172 Ct.Cl. 77 (1965), such instances by their very nature warrant closer analysis than those in which the taxpayer itself contests liability.

To me the accrual of these royalties on a year by year basis most nearly corresponded with the realities of the business transaction, as those realities now appear, and, even more obviously, as those realities would have been known by the taxpayer in 1962 and 1963. Expenses of one year cannot be used to reduce income of a later year, and a taxpayer who fails to accrue an expense in the proper year pays the price of losing it as a deduction unless he files a claim for credit or refund within the time allowed: Treas.Reg. § 1.461–1(a)(3). Had ABKCO elected to defer claiming its deductions until the year of payment, would it now be confronted with the argument that the royalties should have been accrued for 1962 and 1963 and are now forever lost? It might well be—and if so, this would mean the Commissioner can await subsequent events and second guess the taxpayer to the Government's great advantage. I do not believe this is the law nor that it should be.

For the reasons stated, I respectfully dissent and would reverse the decision of the Tax Court.