JOHN T. JOHNSON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Johnson v. Commissioner
Docket No. 5585-74.
United States Tax Court
T.C. Memo 1980-435; 1980 Tax Ct. Memo LEXIS 147; 41 T.C.M. (CCH) 71; T.C.M. (RIA) 80435; September 29, 1980, Filed *147 Petitioner owned and operated a bar at Incline Village, Nev., known as The Chessmen, Inc., a subchapter S corporation in 1970. On his 1970 return petitioner deducted an operating loss carried over from 1969. The 1969 loss stemmed principally from petitioner's share of the 1969 operating loss of The Chessmen. Held:
1. Petitioner had unreported income in 1969 in excess of the operating loss of The Chessmen, and was entitled to no net operating loss carryover to 1970. 2. Petitioner had unreported income in 1970 in amount determined by respondent. 3. Petitioner failed to prove entitlement to business and entertainment expenses for 1970. 4. Interest expense deduction determined. 5. Petitioner failed to prove respondent's determination of his personal living expenses was in error. 6. Gain on sale of stock of The Chessmen redetermined. John T. Johnson, pro se. Dianne I. Crosby, for the respondent. DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, Judge: Respondent determined a deficiency in income tax in the amount of $3,423.32 for petitioner's taxable year ended December 31, 1970. In making this determination respondent, for the purpose of ascertaining whether a *148 net operating loss existed for an earlier taxable year which was available to be carried forward to and deducted in 1970, also examined and made adjustments to the income tax returns petitioner filed for the taxable years 1965, 1968, and 1969. No deficiency notices were mailed for these earlier years, however, because of the statute of limitations. See sec. 6501, I.R.C. 1954. As a result of concessions and of this Court's order, [1] *149 the issues for decision are: (1) Whether, in determining the deficiencies in tax for 1970, respondent is entitled to make adjustments in earlier taxable years (for which the determination of a deficiency is barred by the statute of limitations) in order to determine if a net operating loss exists which is available to be carried forward to 1970; (2) Whether, if respondent is entitled to make adjustments for the earlier years, respondent for 1969 properly computed unreported income of $19,257.79 and properly disallowed a claimed deduction of $2,207.65 for unreimbursed business expenses--advertising and promotion; (3) Whether for 1970 respondent properly determined that petitioner had unreported income of $4,269.49; (4) Whether for 1970 respondent properly disallowed a claimed deduction of $1,755.29 for unreimbursed business expenses--advertising and promotion; (5) Whether for 1970 petitioner is entitled to an interest expense deduction in excess of the $1,400 conceded by respondent; and (6) The amount of gain petitioner realized upon the sale of stock in 1970. FINDINGS OF FACT Some of the facts were stipulated and they are so found. The stipulation *150 of facts and the exhibits attached thereto are incorporated herein by this reference. Petitioner John T. Johnson (hereinafter petitioner) resided in Incline Village, Nev., at the time he filed his petition herein. Petitioner, a cash basis taxpayer, filed an individual Federal income tax return for the taxable year ended December 31, 1970. Petitioner has earned moneys subject to Social Security tax since 1937 in the following amounts: Period
Earnings
1937 thru 1950
$5,552.57
1951 thru 1970
65,437.47
During the years 1967-1970, petitioner operated a bar business known as The Chessmen. During 1967 and the first 4 months of 1968, The Chessmen was operated as a partnership in which petitioner owned a one-half interest. On or about April 30, 1968, petitioner bought his partner's interest in The Chessmen and, thereafter until May 29, 1968, he operated the business as a sole proprietorship. On May 29, 1968, the business was incorporated, petitioner becoming the sole shareholder. A subchapter S election was made for The Chessmen on July 6, 1968, effective for the taxable year 1968. An accrual method of accounting was used by The Chessmen. Petitioner received no salary from The Chessmen during *151 1967-1970. During 1967 petitioner invested $7,789.37 in The Chessmen partnership and he made withdrawals from the partnership of $3,488.31 during the same year. Although an income tax return for 1967 was not introduced, the parties stipulated that petitioner had a net operating loss for 1967 which was carried back to 1966. During the first 4 months of 1968 while The Chessmen was still operated in partnership form, petitioner invested $4,922.99 in and withdrew $1,398.06 from the business. While The Chessmen was operated as a sole proprietorship during May 1968, petitioner invested $879.65 and withdrew $27. During the remainder of 1968 while The Chessmen was operated in corporate form, petitioner made loans to the corporation in excess of withdrawals and loan repayments therefrom in the amount of $679. When petitioner bought out his partner in April 1968, he agreed to assume all the partnership's liabilities and to pay $3,000 to his partner, which amount petitioner paid in 1968. During 1968 petitioner borrowed $11,500 in two installments ($10,000 on May 1, 1968, and $1,500 on June 20, 1968) from Dorothy Smith (hereinafter Smith). These funds were used by petitioner in connection *152 with The Chessmen. This loan was made to petitioner individually and not to The Chessmen. The Chessmen was operated at a loss during 1968. The partnership income tax return for the first 4 months of 1968 showed a loss of $2,457.20, of which one-half ($1,228.60) was allocable to petitioner. For May 1968, when it was operated as a sole proprietorship, The Chessmen had net income of $218.78. On the amended subchapter S return filed for 1968, [2] a net loss of $1,954.40 was reported. The only entries on the amended individual return [3] petitioner filed for 1968 pertain to a net loss of $8,761.53 claimed for the operation of The Chessmen, which loss was computed as follows: Partnership loss
$ (1,228.60)
Partnership expenses paid
(5,797.31)
after dissolution
Sole proprietorship income
218.78
Subchapter S loss (as
(1,954.40)
reported on amended return)
(8,761.53) [4]
The "partnership expenses *153 paid after dissolution" were liabilities incurred while The Chessmen was operated as a partnership and for which petitioner assumed responsibility when he bought out his partner in April 1968. During 1969 petitioner made loans to The Chessmen in excess of withdrawals and loan repayments in the amount of $20,254.82. In that same year petitioner received a personal loan of $5,000 from James Jordahl (hereinafter Jordahl). During both 1969 and 1970 Jordahl also loaned money directly to The Chessmen. The subchapter S return for The Chessmen for 1969 reported a net operating loss of $19,228.78. This amount, together with a $2,207.65 deduction for "unreimbursed expense business promotions and advertising," [5] were combined on petitioner's individual income tax return for 1969 to form a net loss of $21,436.43. No other amounts or items were shown on petitioner's individual return. During 1970 petitioner made loans to The Chessmen in excess of withdrawals and loan repayments in the amount of $3,466.18. Also during that year petitioner paid $1,400 to Smith on account of the 1968 loan, all of which $1,400 was applied *154 against the then accrued interest of $2,139.92. Of the $1,400, the Chessmen paid $1,000 and credited it as a loan repayment to petitioner. The balance was paid by petitioner with his own funds. On or about November 1, 1970, petitioner sold The Chessmen to Jordahl for $40,394.89, payable as follows: Cash
$7,000.00
Forgiveness of 1969 loan
5,000.00
Assumption of liability for
outstanding balance of petitioner's
loan from Smith
12,494.89
Promissory note
15,900.00
$40,394.89
Jordahl's assumption of petitioner's liability on the loan from Smith was accomplished by means of Jordahl's execution of a promissory note to petitioner which note petitioner in turn assigned to Smith on January 1, 1971. Thereafter, payments were made by Jordahl directly to Smith. Petitioner used $3,828.02 of the funds received from the sale of the stock to purchase real property in 1970. The $15,900 promissory note which Jordahl gave petitioner was, on July 14, 1971, discounted to 75 percent of the balance due. On that date Jordahl paid petitioner in cash the full amount, $11,347.65, of the discounted note. On the individual income tax return filed for the taxable year in issue, petitioner reported the sale of The Chessmen *155 stock as follows: Sales price
$40,394.89
BASIS
(12,331.73)
Net long-term capital gain
28,063.16
50 percent exclusion
(14,031.58)
Taxable gain
14,031.58 In computing taxable income, petitioner, inter alia, deducted (a) $8,694.32 as a net operating loss carryforward from 1969; (b) $2,139.92 as an itemized interest-expense deduction for the accrued interest on the loan from Smith; and (c) $1,755.29 for unreimbursed business expenses--promotion and advertising for The Chessmen. [6] Petitioner, in computing the amount of the 1969 net operating loss available to be carried forward to 1970, carried back to his taxable year 1966 $12,742.11 of the $21,436.43 loss reported for 1969. In the statutory notice of deficiency, respondent made the following adjustment: (a) Disallowed the $8,694.32 net-operating-loss-carryover deduction on the grounds that no net operating loss existed for an earlier taxable year which was available to be carried forward; (b) disallowed $1,139.92 of itemized interest-expense deductions; [7] (c) disallowed the $1,755.29 deduction for unreimbursed expenses for lack of proper section 274 substantiation; (d) determined *156 that net long-term capital gain of $14,652.20 was realized on the sale of The Chessmen stock; [8] and (e) determined, by use of the application and source of funds method, that petitioner had unreported income of $4,269.49. The unreported income amount was determined as follows: Application of funds: Loan to The Chessmen
$3,466.18
Unreimbursed business expenses
1,755.29
Purchase of property
3,828.02
Living expenses
2,220.00
$11,269.49
Source of funds: Sale of The Chessmen (cash)
7,000.00
Unreported income
4,269.49
In making the determination that no net operating loss existed for earlier years which was available to be carried forward to 1970, respondent made various adjustments to petitioner's taxable years 1965, 1968, and 1969. In general, these adjustments entailed reducing the net operating losses reported by petitioner for 1968 and 1969. The net operating loss for 1968 was reduced to $4,805.33, which amount was then carried back to petitioner's taxable *157 year 1965 and completely absorbed in that year. Respondent also disallowed for 1965 the itemized deductions taken by petitioner for the $96 payment to the Lions Club and the $3 poll tax payment. Petitioner was allowed an overpayment for 1965. The adjustments made for 1969 increased petitioner's income by an amount greater than the net operating loss originally reported, thus resulting in net income. Assessment of a deficiency for 1969 was, however, barred by the statute of limitations. The principal adjustments made for 1969 were: (a) Disallowance of the $2,207.65 deduction claimed for unreimbursed expenses; and (b) the determination, by use of the application and source of funds method, that petitioner had $19,257.79 in unreported income. The unreported income amount was determined as follows: Application of funds: Loans to The Chessmen
$20,254.82
Living expenses
2,720.00
Unreimbursed business
expenses
2,207.65
$25,182.47
Source of funds: Loan from Jordahl
5,000.00
Loan repayment from
The Chessmen
924.68
5,924.68
Unreported income
19,257.79
OPINION The only year for which a deficiency was determined by respondent is petitioner's taxable year 1970. In making that determination, respondent also *158 examined and made adjustments to petitioner's taxable years 1965, 1968, and 1969. The purpose and effect of the examinations and adjustments for the earlier years were to establish that a net operating loss did not exist for an earlier year available to be carried forward to 1970. Petitioner contends that respondent has no authority to consider the earlier years since the statute of limitations bars the determination of a deficiency for those years. While petitioner is correct that the determination of a deficiency is barred for the earlier years, respondent is entitled to recompute petitioner's income for the earlier years in determining the deficiency for 1970. ABKCO Industries, Inc. v. Commissioner,56 T.C. 1083, 1089 (1971), affd. on another issue 482 F.2d 150 (3d Cir. 1973). Furthermore, this Court has jurisdiction to consider those earlier years. Sec. 6214(b). [9] "It is well settled that [pursuant to sec. 6214(b)] we may determine the correct amount of taxable income or net operating loss for a year not in issue (whether or not the assessment of a deficiency for that year is barred) as a preliminary step in determining the correct amount of a net operating loss carryover *159 to a taxable year in issue." (Cits. omitted.) Lone Manor Farms, Inc. v. Commissioner,61 T.C. 436, 440 (1974), affd. without published opinion 510 F.2d 970 (3d Cir. 1975). Thus, respondent was entitled to make, and we may consider, the adjustments made to years prior to 1970. As to petitioner's taxable year 1968, the parties have reached agreement on the adjustments to be made. Although the net effect of this agreement increases petitioner's net operating loss for 1968, it does not affect the deficiency determination for 1970.The increased net operating loss can still be carried back to petitioner's 1965 taxable year and be totally absorbed. [10] *160 The manner in which respondent computed the deficiency in petitioner's individual income *161 tax for 1970 is rather unique. The principal adjustment was disallowance of an operating loss carryover from 1969. The operating loss in 1969 was that of The Chessmen, a subchapter S corporation of which petitioner was the only stockholder. Respondent made few adjustments to the loss reported for the corporation for 1969. But since petitioner picked up the corporate loss for use on his personal returns for 1969, respondent has determined, by use of the source and application of funds method, that petitioner had unreported personal income that would more than offset the corporate loss, thus leaving petitioner no individual operating loss to be carried over to 1970. Respondent suggests that the most likely source of petitioner's unreported income is the diversion of gross receipts from the corporation. He points to the discrepancy in gross receipts reported for The Chessmen for 1968 ($67,003.98), for 1969 ($24,707.08), and for 1970 ($45,901.54), in support of his suggestion. For petitioner's taxable year 1969, the parties have stipulated that one of respondent's adjustments, disallowance of a $924.68 deduction by The Chessmen for a cash short, was erroneous. Correction of this *162 adjustment, although increasing The Chessmen's net operating loss for 1969, has no effect on the deficiency determined for 1970 since petitioner's net income for 1969 remains unchanged. Allowance of the deduction for The Chessmen would not increase petitioner's net operating loss for 1969 because the same amount was included in respondent's source and application of funds computation as a source of funds for petitioner. Conceptually, allowance of the amount as a proper deduction would also require that it be removed as a source of funds for petitioner since a "cash short" would not be funds which petitioner had. Thus, any increase in The Chessmen's net operating loss would be offset by an equal increase in petitioner's unreported income. The specific adjustments for each of 1969 and 1970 on which the parties did not agree and which remain at issue are purely factual. For convenience we will consider together the similar adjustments made in each year. Unreported income.
In each of 1969 and 1970 respondent determined by use of the sources and applications of funds method that petitioner had unreported income in the respective amounts of $19,257.79 and $4,269.49. Respondent's computations *163 are set forth in the Findings of Fact. As previously noted for 1969, the parties' agreement concerning the allowance of a cash-short deduction for The Chessmen would seemingly require removal of the same amount from respondent's (source of funds) unreported income computation, thereby increasing net income. On brief, respondent asserts for 1970 that petitioner had $400 more in unreported income than determined in the statutory notice as a result of respondent's concession that petitioner was entitled to a $400 greater interest-expense deduction than previously allowed. This $400, respondent contends, must then be included in the application-of-funds portion of the computation. The source and application of funds method of reconstructing income is based on the assumption that the amount by which a taxpayer's application of funds exceeds his reported sources of funds has, absent some explanation by the taxpayer, taxable origins. [11] To explain the difference between the application of funds and the sources thereof, the taxpayer may show that he had nontaxable sources of funds such as cash on hand, gifts, loans, etc. Respondent's computations are presumed correct, and petitioner has *164 the burden of disproving them. Rule 142(a), Tax Court Rules of Practice and Procedure. See Vassallo v. Commissioner,23 T.C. 656 (1955). Petitioner advances three arguments in attempting to prove that respondent's calculations are in error: (1) No beginning net worth was established; (2) petitioner had a nontaxable cash hoard of greater than $35,000 as a source of funds; and (3) petitioner expended less for living expenses than determined by respondent. Petitioner does not dispute the other items contained in the application-of-funds portions of the computations, nor does he challenge the items listed as fund sources. [12]
Petitioner's first and second arguments are two sides of the same coin, i.e., that petitioner had funds available at the beginning of 1969 which he expended during 1969 and 1970 and which explain the expenditures in excess of reported funds. Respondent proceeded on the assumption that petitioner's net worth remained the same throughout *165 the period involved and that excess expenditures were made with taxable income, so a beginning net worth is not required for the computation. If respondent's assumptions were erroneous, petitioner has the burden of so showing. [13]
Petitioner has failed to meet his burden. His testimony that he had in excess of $35,000 in funds as of the beginning of 1969 was unconvincing. According to petitioner, this cash hoard was composed of three items: (1) $10,000 in savings; (2) $25,000 loan from Mark Stone; and (3) proceeds from the sale of a coin collection. In support of his assertion that he had $10,000 in savings, petitioner introduced a document showing his earnings for the period 1937-1970 which were subject to social security tax (about $71,000). Petitioner asserts that from these earnings he was able to save $10,000, which amount he kept in cash. He offered no evidence, except his own testimony, to prove the existence of such a cash hoard. While petitioner may have lived frugally, this evidence does not meet petitioner's burden, especially when it is considered that during the period 1951-1969 petitioner was married three *166 times and had one child whom he also supported at times. We do not believe that as of the beginming of 1969 petitioner had cash savings of $10,000. We are also unconvinced that petitioner received a $25,000 loan from Mark Stone. Internal Revenue Service personnel testified that, despite persistent efforts, they were unable to locate Mark Stone or find anyone who knew of him after they were initially told by petitioner that he had received this loan. Mark Stone never spoke with any Internal Revenue Service agent, nor did he testify at the trial. The only evidence of his existence, much less of the loan, was petitioner's testimony and several documents which, while containing the name Mark Stone, could just as easily have been prepared by petitioner. Petitioner offered no reliable evidence, such as notes, checks, wtitten agreements, etc., to support his testimony that Mark Stone had loaned him $25,000 prior to 1969 which he had not repaid. Under the circumstances we cannot accept petitioner's unsupported testimony as proof of this alleged nontaxable source of funds. Finally, petitioner has also failed to establish that he had funds from the sale of a coin collection. Although *167 there was evidence that petitioner at one time had a coin collection, there was no concrete evidence concerning when, if at all, and for how much this collection was sold. Accordingly, we conclude that petitioner has failed to establish the existence of any cash hoard as of the beginning of 1969 which would provide a nontaxable source for the expenditures in excess of unreported sources of income. Moreover, evidence concerning loans petitioner obtained during the period involved and other financial dealings is inconsistent with the existence of a cash hoard. Petitioner's only other argument with regard to the unreported income computations was that he had less living expenses than determined by respondent. Petitioner agreed that the living expenses determined by respondent were low under normal circumstances but he argued that since he lived and ate most of his meals at the bar, respondent's estimate was too high. Other than his vague testimony, petitioner presented no evidence as to what his living expenses might have been. Accordingly, we sustain respondent's determinations. In summary, we sustain respondent's determination concerning petitioner's unreported income for 1969 *168 and 1970.The 1969 determination, together with the disallowance of a claimed business expense, infra, totally absorbs the net operating loss from The Chessmen, thus leaving no individual net operating loss to be carried forward to 1970. Unreported business expenses.
In each of 1969 and 1970 respondent disallowed deductions taken by petitioner in his individual income tax returns for unreimbursed business expenses for promotion and advertising. Respondent does not contest that petitioner in fact expended the amounts in question, rather he contends that petitioner has failed to satisfy the substantiation requirements of section 274. We agree with respondent. Petitioner testified that the expenditures were made when he went into other bars and restaurants and bought meals and drinks for other people. Petitioner claims that these expenditures were a form of advertising for The Chessmen and that this was a routine practice for owners of bars. Section 274(d) requires that a taxpayer substantiate by adequate records or other evidence certain specific facts when claiming a deduction for expenses such as are claimed by petitioner. These specific facts were not established at trial by *169 petitioner's general testimony. Petitioner testified that he had records which adequately substantiated the expenses, but, hinting that respondent is somehow responsible, that such records were lost during respondent's audit of his income tax return. Not only is petitioner's testimony concerning the existence of such records unconvincing, even assuming that they did exist and were lost, petitioner has made no effort to reconstruct the records. Sec. 1.274-5(c)(5), Income Tax Regs. Accordingly we sustain respondent's determination. Interest expense.
On his individual income tax return for 1970, petitioner deducted as an itemized interest expense deduction the $2,139.92 in interest which had accrued as of 1970 on the $11,500 loan from Smith. Respondent has conceded that petitioner is entitled to a deduction for the $1,400 in interest actually paid ($400 by petitioner and $1,000 by The Chessmen which was treated as a loan repayment to petitioner) in 1970. Petitioner asserts that the loan from Smith was made to The Chessmen and not to him, and that The Chessmen, which used the accrual method of accounting, was entitled to accrue the $2,139.92 as an interest expense in 1970. Petitioner *170 further contends that it was only through inadvertence that the deduction was taken on petitioner's return rather than The Chessmen's. There is no evidence to support petitioner's bald assertion that the Smith loan was made to The Chessmen and not to petitioner. The evidence introduced supports the conclusion that the loan was to petitioner personally, and we have so found. Of particular importance is the fact that when The Chessmen paid the $1,000 to Smith in 1970, it was treated as a loan repayment to petitioner. This treatment of the $1,000 payment is not consistent with petitioner's assertion that the loan was to the corporation. Similarly, the treatment accorded the loan when Jordahl purchased The Chessmen stock is inconsistent with the assertion that the loan was to the corporation. Petitioner, a cash basis taxpayer, was allowed an interest-expense deduction for all interest amounts paid in cash in 1970.He is not entitled to a larger deduction. Accordingly, we sustain the respondent's determination. Stock sale.
Petitioner in 1970 sold his stock in The Chessmen. The parties are in basic agreement as to the method to be used to calculate the gain petitioner realized on *171 the sale, that being the one set forth in the statutory notice. In the statutory notice respondent determined petitioner's gain as follows: Sales price
$36,612.10
Basis
Basis in partnership
$4,354.20
Purchase of partner's
interest
3,000.00
Assumption of liabilities
2,898.65
10,252.85
Less: Liabilities assumed by
corporation
6,061.77
4,191.08
Add: Loan to corporation
$24,400.00
Less: Repayments
2,028.60
22,371.40
26,562.48
Less: Corporation losses
1968
950.68
1969
18,304.10
19,254.78
7,307.70
7,307.70
Total gain
29,304.40
Less: 50 percent long-term
capital gain
deduction
14,652.20
Correct gain
14,652.20
Reported gain
14,031.58
Adjustment to income
620.62
On brief, respondent asserts that petitioner realized more gain than originally determined in the notice of deficiency as a result of respondent's concessions that increased The Chessmen's losses for 1968 and 1969, thereby reducing petitioner's basis in the stock. By adding the cash shortage of $1,103.92 to the loss for 1968 and deducting the $100.20 of additional income reported on the amended 1968 return filed by the corporation, respondent increases the 1968 corporate loss to $1,954.40 rather than the $950.68 used in the notice of deficiency. And by adding the $924.68 *172 cash shortage to the corporate loss for 1969, respondent increases the loss to $19,228.78 rather than the $18,304.10 used in the notice of deficiency. Petitioner does not contest respondent's assertion. Petitioner notes, however, that the parties stipulated that petitioner's loans to The Chessmen in excess of withdrawals and repayments during 1968-1970 totaled $24,400, and that such amount should not be reduced by the $2,028.60 shown. We agree.
Although the source of the $2,028.60 amount is not specifically identified, the figure appears to be a total of the two cash shorts. Since respondent conceded that the cash shorts were deductible by The Chessmen, thus increasing its operating losses and incidentally reducing petitioner's basis, they cannot be loan repayments to petitioner. Furthermore, the parties have stipulated that the $24,400 was a net figure, and it should not be reduced by additional alleged repayments. If the $2,028.60 is removed from respondent's computation on brief, which otherwise appears to be correct, petitioner's basis in the stock of The Chessmen sold to Jordahl in 1970 was $7,407.90, thus giving him a gain of $29,204.20 on the sale, rather than the $31,232.80 *173 claimed by respondent on brief. Petitioner's net long-term capital gain was therefore $14,602.10, and we so find. Decision will be entered under Rule 155.
Footnotes
1. Contained in the petition were various constitutional arguments and prayers for refunds (for taxable years other than 1970), punitive damages, costs and other awards. Upon respondent's motion, this Court by order dated February 25, 1975, struck the portions of the petition containing the various constitutional arguments and above-referred-to prayers for failure to state a claim upon which relief could be granted. By the same order the Court granted respondent's motion to dismiss for lack of jurisdiction and to strike as to taxable years 1965, 1966, 1968, and 1969. Petitioner appealed this order to the Ninth Circuit Court of Appeals. The Ninth Circuit, by order dated Nov. 19, 1975, dismissed petitioner's motion for lack of jurisdiction as an appeal from an unappealable interlocutory order.
2. The original subchapter S return filed for 1968 is not important to the disposition of this case.↩
3. The original individual return filed for 1968 is not important for purposes of this case.↩
4. On brief petitioner states that the net operating loss reported for 1968 was carried back to his taxable years 1965 and 1966.↩
5. Respondent has conceded that petitioner did in fact expend this amount.↩
6. Respondent has conceded that petitioner did in fact expend this amount.↩
7. Respondent has conceded that $400 of the disallowed amount is deductible. ↩
8. In making this computation respondent used as the sales price an amount which reflected the discounting of the $15,900 promissory note from Jordahl to petitioner.↩
9. Sec. 6214(b). Jurisdiction Over Other Years and Quarters.--The Tax Court in redetermining a deficiency of income tax for any taxable year or of gift tax for any calendar year or calendar quarter shall consider such facts with relation to the taxes for other years or calendar quarters as may be necessary correctly to redetermine the amount of such deficiency, but in so doing shall have no jurisdiction to determine whether or not the tax for any other year or calendar quarter has been overpaid or underpaid.↩
10. Allowance of a greater net operating loss carryback from 1968 to 1965 would not enable this Court to determine that there was an overassessment in 1965 greater in amount than that allowed by respondent in the notice of deficiency. This Court has no jurisdiction to determine overassessments for taxable years for which the respondent has not determined a deficiency. Secs. 6214(b), 6512(b)(1). Moreover, any overpayment for a year not before the Court cannot be recouped against the deficiency for the year under redetermination. Commissioner v. Gooch Co.,320 U.S. 418↩ (1943). Thus, the parties' agreement that a greater net operating loss existed for 1968 than originally computed by respondent is of no benefit to petitioner. Similarly, even if accepted, petitioner's contention that respondent improperly disallowed itemized deductions for 1965 in the total amount of $99 is of no benefit. Allowance of a $99 deduction would still result in taxable income sufficient to absorb totally the increased net operating loss for 1968. Thus, in any event, no net operating loss for 1968 would be potentially available to be carried forward to 1970.
11. Roundtree v. Commissioner,T.C.Memo. 1980-117↩.
12. Petitioner makes no mention on brief concerning respondent's adjustments to the unreported income computations for each of the years as a result of the other concessions by respondent.↩
13. See Troncelliti v. Commissioner,T.C.Memo. 1971-72↩, n. 11.